MINNIE LEE THOMAS, MOTHER OF JAMES THOMAS, DECEASED, v. THE
RALEIGH GAS COMPANY (EMPLOYER), AND LIBERTY MUTUAL IN-
SURANCE COMPANY (CARRIER).

(Filed 7 November, 1940.)

**1. Master and Servant § 55d—**

While it may be admitted that in some instances the question of de-
pendency may be a mixed question of fact and of law, where the facts
admitted or found by the Commission upon competent evidence support
the conclusion of the Commission in regard thereto, its award is binding
on the Court.

**2. Master and Servant § 43—Evidence held to sustain finding that claimant
was totally dependent upon deceased employee, notwithstanding small
sums earned by claimant in casual employment.**

The evidence tended to show that the mother of the deceased employee
lived with him, that he paid the rent, bought groceries and supported her
for a period of years, but that for two months prior to his death she did
washing and nominal services for, and stayed with, an aged bedridden
person and earned $5.75 per week thereby, which she deposited in a bank
or used to buy small luxuries. *Held:* The fact that the mother earned
small amounts of money in temporary and casual employment does not
indicate any dependable source of income other than that she received
from her son, and the conclusion of the Industrial Commission that she
was totally dependent upon her son within the meaning of the Compensa-
tion Act, is sustained.

**3. Master and Servant § 37—**

The Workmen's Compensation Act must be liberally construed and
liberally applied.

APPEAL by defendants from *Harris, J.,* 29 June, 1940. From WAKE.
Affirmed.

The plaintiff, Minnie Lee Thomas, brought this proceeding before the
Industrial Commission to have an award made to her, as dependent,
because of the death of her son, James Thomas, while in the service of
the defendant Gas Company. At the final hearing before the Full Com-
mission an award was made to the plaintiff, and from the order of the
Industrial Commission the defendants appealed to the Superior Court,
where the matter was heard by Judge Harris on 29 June, 1940. From
the judgment affirming the award the defendants appealed to this Court.

We quote from the record certain admissions which narrow the scope
of inquiry on the hearing before the Commission, and which are effectual
here: "When this case was called for a hearing counsel agreed that both
the plaintiff and defendant employer are subject to and bound by the
provisions of the Act; Liberty Mutual Insurance Company is the carrier
for the defendant employer; and an average weekly wage of the deceased

employee at the time of his accident resulting in his death was $14.66; the deceased employee suffered an accident November 2, 1939, arising in the course of and out of his employment, from which injuries resulting from the accident he died, met his death. The sole question involved at the hearing was the party or parties to whom compensation should be paid on account of the death of the said deceased employee."

Upon that question the pertinent evidence is substantially as follows: The son, James Thomas, at the time of his death was living in a house on East Martin Street in Raleigh, and the mother made her home with him. She testified: "I lived by my boy. He took care of me. He took me to Raleigh and I lived there from 1936 up to the time of his death. During the four years or three years and a half I did no work myself. I didn't have any income during that time. Shortly before his death I stayed with Mrs. Haywood, who lived at 200 East Edenton Street. She is an old lady in her eightieth year, the mother of Mr. Holt Haywood and Mr. Alt Haywood. She is an invalid. I had been there with her two months and a half prior to James' death. She paid me $5.75 a week for that two months and a half. That is all the income I have had for the last three years. It was my duty to go there and sleep with her. My daughter-in-law prepared the meals and fixed them and all I had to do was eat mine and carry Mrs. Haywood's to her, to her bed. I had not been able to do any work since the early spring of 1937 when I had a stroke. I had been under a doctor's care from time to time since. I had not done any work nor earned any income other than Mrs. Haywood paid me for the eight weeks, and I was totally dependent upon my son James for my livelihood. He supported me all the time.

"She didn't furnish me breakfast. I got all my meals at home but sometimes I et (ate) supper with her. I did her laundry for her— that was the 75 cents. I started doing her laundry in 1937. I had my nephew, Sam Arthur, with me and my son James. Out of the money James gave me and the money I earned the three of us lived. James paid all the bills and the rent. We paid fifteen dollars a month rent. He paid for all the groceries. I don't know how much that was. He bought the groceries and brought them to me. All I had to do was tell him when I needed it and he brought it. I helped Mrs. Bailey who lived there nine years ago; haven't been doing it during the last three years. Mrs. Haywood didn't ask me to do nothing; she didn't do anything but stay in bed. I was there to do whatever was necessary, and for that she paid me $5.00 and in addition paid me seventy-five cents for the laundry.

"I am fifty-eight years old. Since 1936, when my husband died, my son had supported me entirely. I did not work during that period except for this lady for two months prior to my son's death. During

THOMAS v. GAS CO.

those two months my son bought all my groceries and paid the house rent. I had my money in the bank; didn't use any of it for my support. After he died that was the money I had to fall back on. He bought my clothes during this period, everything. He paid my house rent. He didn't support anybody else that I know of; he didn't have a wife. He had no children. He had never been married. He didn't support any brothers or sisters. I was the only one dependent upon him."

Another son of plaintiff, with his family, lived in one end of the house, paying the rent on rooms occupied by him. James (the deceased), paid the rent on the rooms occupied by himself and his mother. There was temporarily with her at some times a grandson, who furnished her no support.

Plaintiff testified that she had about $600.00 insurance from her husband at his death, but that all of it had been spent for bills.

In its main particulars the testimony of the plaintiff was supported by a son who occupied rooms in another part of the house, and there was much evidence from this source that the mother was entirely dependent upon the deceased son, James Thomas.

Upon this evidence the Industrial Commission found that the plaintiff was wholly dependent upon the deceased employee, James Thomas, for support; that since 1936 she has been physically unable to perform average manual labor; that she has during that time earned 75c per week for washing, and for two months immediately previous to his death she had slept in the room with an ill lady and performed some nominal services for her, receiving a sum of $5.00 a week, and that she had saved and placed in the bank the principal portions of these earnings, but used a small part for buying minor luxuries she desired to obtain; and, again, "that specifically the said Minnie Lee Thomas was wholly dependent upon the deceased James Thomas for support at the time of his death." There is a further finding that the deceased had no other dependent with the exception of Sam Bonaparte, who was partially dependent. Thereupon, the Full Commission followed its findings of fact with the conclusion of law that the plaintiff was wholly dependent upon her deceased son and that Sam Bonaparte was only partially dependent, and made an award (based upon the average weekly wage of $14.66), of $8.80 per week, for a period of 350 weeks, and, in addition thereto, ordered the defendants to pay the burial expenses, not to exceed $200.00, and all costs of the case.

*Wm. H. Yarborough, Jr., and Robert C. Howison, Jr., for defendants, appellants.*
*Clem B. Holding for plaintiff, appellee.*

SEAWELL, J. The Industrial Commission took the view that the casual and temporary employment of the plaintiff for a short time at a wage of $5.00 a week for two months during the period of the four preceding years, did not take her out of the category of entire dependency upon her deceased son.

We may concede that dependency may in some instances become a mixed question of fact and law. *Re: Carroll* (1917), 65 Ind. App., 148, 116 N. E., 844. But where the factual element is admitted, or has been determined on competent evidence consistently with its counterpart of legal definition, that is the end of the trail. *Walker v. Wilkins,* 212 N. C., 627, 194 S. E., 89; *Winslow v. Conference Assn.,* 211 N. C., 571, 191 S. E., 403; *Carlton v. Bernhardt-Seagle Co.,* 210 N. C., 655, 188 S. E., 77; *Swink v. Asbestos Co.,* 210 N. C., 303, 186 S. E., 258; *Tomlinson v. Norwood,* 208 N. C., 716, 182 S. E., 659; *Reed v. Lavender Bros.,* 206 N. C., 898, 172 S. E., 877. We are satisfied that the conclusion reached by the Industrial Commission and the lower reviewing court, both as to fact and law, is in accord with the best considered cases dealing with similar situations, and with the spirit and purpose of the Workmen's Compensation Act.

The determining facts in this case, including the condition of the plaintiff and the fact of her actual support by her deceased son, the small amount of money received by her during a period of years, and its deposit in the bank, cannot be held to affect her status as being wholly dependent upon her deceased son. The receipt of the small amount involved, temporary and casual in character, does not indicate any dependable source of income other than that received from her son.

In this respect the Court feels that there is sound reason and justice in the view taken of similar situations in the decisions noted:

"Total dependency exists where the dependent subsists entirely on the earnings of the workman. But in applying this rule courts have not deprived claimants of the rights of total dependents, when otherwise entitled thereto, on account of temporary gratuitous services rendered them by others, or on account of occasional financial assistance received from other sources, or on account of other minor considerations or benefits which do not substantially modify or change the general rule as above stated. *Stone Co. v. Phillips,* 65 Ind. App., 189, 116 N. E., 850; *Williams case,* 122 Me., 477, 120 A., 620; *Coal Co. v. Frazier,* 229 Ky., 450, 17 S. W. (2d), 406; *State ex rel. v. Dist. Court,* 128 Minn., 338, 151 N. W., 123; *McKesson Co. v. Industrial Com.,* 212 Wis., 507, 250 N. W., 396." *Maryland Casualty Co. v. Campbell,* 34 Ga. App., 311, 129 S. E., 447. Adopted in *Garbutt v. State et al.,* 287 Mich., 396, 283 N. W., 624.

In *Blue Diamond Coal Co. v. Frazier et al.,* 17 S. W. (2d), 406, the principle is thus expressed: "One of the purposes of the Act is to provide for the dependents of the workman injured in the course of his employment, for their right to sue and obtain compensation for his death, under the constitutional provision, is taken away. The statute, therefore, should be liberally construed in their favor. A person may be wholly dependent on an employee, although he may have some slight savings of his own, or some other slight property, or be able to make something by his own services."

Any award made to an employee whose injury arises out of and in the course of his employment, or to a dependent in case of his death, is measured by a hard fact rule—his earnings for a definite period of time. In view of the inconsiderable sum received by the plaintiff, and the uncertainty of further income, it would be unjust to make a purely speculative deduction from such an award.

It is a familiar rule that the terms of the Workmen's Compensation Act must be liberally construed and liberally applied. *Wick v. Gunn,* 66 Okla., 316, 169 P., 1087, 4 A. L. R., 107; *Cole v. Minick,* 123 Neb., 871, 244 N. W., 785, 787. In *Blue Diamond Coal Co. v. Frazier, supra,* it will be noted that this rule is applied to the same factual situation we have in the case at bar. That rule has become standard in reviewing compensation cases in this State. *Smith v. Light Co.,* 198 N. C., 614, 620, 152 S. E., 805; *Johnson v. Hosiery Co.,* 199 N. C., 38, 153 S. E., 591; *Reeves v. Parker-Graham-Sexton, Inc.,* 199 N. C., 236, 154 S. E., 66.

The judgment is
Affirmed.