WILLIAM J. LARKIN, ET AL. *v.* ISABELLE D. SMITH

.[No. 15, April Term, 1944.]

*Decided May 4, 1944.*

276

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, and BAILEY, JJ.

*Foster H. Fanseen,* with whom was *B. G. Wilkinson,* on the brief, for the appellant.

*Paul Berman and Eugene A. Alexander, III,* with whom was *C. E. Hogg,* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

An employer and insurer appeal from a judgment in favor of a claimant entered in the Court of Common Pleas of Baltimore City, on appeal from the State Industrial Accident Commission. The commission had decided in favor of the claimant, and the jury answered the several issues in her favor. Five exceptions were taken during the course of the trial, all of which have been abandoned except the last two. Number four is to the refusal by the trial court of employer and insurer's prayer No. 1. Number five is to the instructions given by the trial court to the jury.

The record shows that the appellee is the mother of George E. Smith, Jr., who died as a result of injuries sustained while in the performance of duties arising out of and within the scope of his employment. The claimant had five other children, all minors, and a husband who was not living with her. The accident, from which her son died, occurred on December 15, 1942. At that time the appellee claimed she was not employed. One of her younger children who at times had earned $6 a

week outside of school hours, was working in December, but what money he got in that month he spent on himself. After the brother's death, this younger boy started giving his mother most of his earnings, according to her testimony. He had given her some in October. The appellee had previously worked in a restaurant, but stated she had stopped prior to the fatal accident on account of her health. She had seven hens, and would sometimes save eggs and sell them. She lived in a home which belonged to her and her uncle, and she kept the uncle in the home. When she was working at the restaurant she was earning $11 a week. According to her testimony after she stopped working, she frequently went over to the restaurant to see her former employer, and occasionally the latter would give her something to eat. Sometimes she would wash dishes and her former employer would give her a dress or a pair of shoes, but she never received any money or food to take home after she stopped working. The average earnings of the son who died were $23 a week, and he contributed about $18 a week to her support and to the support of the children.

The appellants did not concede all of these facts, but offered witnesses to the fact that appellee was seen at the restaurant in December, and one of these witnesses said he cashed a check for her in the latter part of November. Another witness testified that appellee had been seen going back and forth to the restaurant, but the witness did not know what she was doing, and did not know whether she was getting paid. That witness went to the restaurant about once a week, and sometimes the appellee would get her a pint of ice cream there. The appellants also produced the employer of the minor boy, who was earning $6 a week. She testified that the boy started working for her in October, quit in November, and came back in December. He came in the evening, and was paid $6 a week, but there is no evidence that the appellee got any of the money in December.

On these facts the trial court instructed the jury that the State Industrial Accident Commission had decided that the appellee was wholly dependent upon the decedent at the time of his death, that decision was *prima facie* correct, and the burden of proof was on the appellants to show by a fair preponderance of affirmative evidence that the appellee was not only dependent. The appellants asked the court to instruct the jury that if they should believe from the evidence "that the claimant received any support from any source other than from George E. Smith, Jr., at the time of his injury," then they should answer the second issue submitted by the appellants, "yes." This second issue was whether the appellee was partly dependent on the deceased. The court refused this prayer, and this refusal, as above stated, is the subject of the fourth exception.

The third issue of the appellants, as well as the first issue of the appellee, asked the jury to find whether the appellee was wholly dependent upon the deceased at the time of the injury. After they had retired, they returned and the foreman, in writing, requested the court to answer a rather confused question, the gist of which, however, was embodied in the last sentence, which read, "We are seeking the interpretation of the word, wholly." The trial court in answer to this question did not define wholly, but told the jury what the appellants' construction of the word was, and instructed the jury that he did not think the Legislature intended any such construction. The court's instruction on this point is as follows:

"I don't know that I can help you any. Mr. Fanseen says that the word 'wholly' is so tightly drawn and is so narrow in its interpretation, that if someone had given this mother, who lost her son, I believe, in December, 1942, so much as a loaf of bread, in consideration of wiping a plate, that that would make a difference of two thousand dollars in the compensation to which she would otherwise be entitled by reason of the death of her son under the circumstances which appear here.

"Mr. Fanseen further makes the point, I believe, that the money derived from the sale of an accumulation of eggs from some six or seven hens, perhaps a dozen eggs, distributed between the mother and four minor children, would constitute support other than the support from her deceased son.

"All I can say is this, and I say it in a very serious mood, and over Mr. Fanseen's objection, giving him an exception: I don't think that the Legislature intended any such illiberal construction of the word 'wholly'." The court then went on to discuss the evidence, apparently stating correctly what had been testified to, and then he said: "Counsel has suggested I should tell you this (I thought I had already told you) that I haven't a thing to do with determining the facts; it isn't my job to tell you for which side you ought to decide the case; and it is for you to determine where the truth lies, and not for me. And in my discussion of the facts; if I discussed them, it isn't my intention to sway you this way or sway you that way, as to the ascertainment of the truth. You must always remember, though, that the findings of the Commission that this woman was a total dependent is *prima facie* correct. That means that is assumed to be the truth, and we are all bound by that until or unless Mr. Fanseen and his clients produce some testimony sufficient to your minds to overcome that presumption. In other words, he carries the load. Now, whether it is a heavy load or light load is for you to determine; and the only way he can relieve himself of that load is to produce in your minds a little bit more truth than the other side. I don't mean more witnesses, but more truth." Appellants object to this charge, both on the ground that the court's interpretation of the meaning of wholly dependent was wrong, and on the further ground that in discussing the evidence, the court unduly accented that part which was favorable to the appellee and disregarded evidence, which was favorable to the appellants.

The first objection to the charge is the same as that made to the refusal to grant the appellants' first prayer, and will be considered in connection with that. The point there is the meaning of the words "wholly dependent" in the Workmen's Compensation Act, Code, 1939, Article 101, Section 48. The statute provides that certain people shall be presumed to be wholly dependent and then "In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in death of such employee * * *." The words "wholly dependent" are generally not precisely defined, but in numerous cases in other jurisdictions, the facts have been discussed, and the courts have said whether or not proof of other income of various kinds prevents a claimant from being wholly dependent. Counsel have referred us to a number of these cases which we have examined. It is not necessary to discuss the facts in all these cases, and it would cause this opinion to reach an unreasonable length were we to do so. The almost universal rule seems to be that stated in the case of *Bloomington-Bedford Stone Company v. Phillips,* decided in 1917 by the Appellate Court of Indiana, and reported in 65 Ind. App. 189, 116 N. E., beginning at page 850. That rule is as follows: "Total dependency exists where the dependent subsists entirely on the earnings of the workman; but in applying this rule courts have not deprived claimants of the rights of total dependents, when otherwise entitled thereto, on account of temporary gratuitous services rendered them by others, or on account of occasional financial assistance received from other sources, or on account of other minor considerations or benefits which do not substantially modify or change the general rule as above stated." There is another terminology frequently used and quoted, "that the individual has no consequential source or means of maintenance other than the earnings of the workmen." *McCormick v. Central Coal & Coke Co.,* 117 Kan. 686, 232 P. 1071, 1074; *Proffitt v. Aldridge,*

154, Kan. 468, 119 P. 2d 523. Among the cases in which the subject is discussed, and which sustain these views are *Garbutt v. Stoll,* 287 Mich. 396, 283 N. W. 624; *In re Carter,* 221 Mass. 105, 108 N. E. 911; *Petrozino v. American Mutual Liability Company,* 219 Mass. 498, 107 N. E. 370; *Peterson v. Industrial Accident Commission,* 188 Cal. 15, 204 P. 390; *Pacific Indemnity Company v. Industrial Accident Commission,* 204 Cal. 427, 268 P. 663; *Cardone v. Jennings,* 133 Pa. Super. 318, 2 A. 2d 590; *State v. District Court,* 131 Minn. 27, 154 N. W. 509; *Murphy v. Genesee County Road Commission,* 250 Mich. 457, 230 N. 937; *McKesson-Fuller-Morrison Co. v. Industrial Commission,* 212 Wis. 507, 250 N. W. 396; *Thomas v. Raleigh Gas Company,* 218 N. C. 429, 11 S. E. 2d 297; *Cokeley v. Robert Lee, Inc.,* 197 S. C. 157, 14 S. E. 2d 889. This list does not by any means exhaust the cases on the subject, and in these decisions will be found references to other cases reaching similar conclusions.

The exact question has not been before us, although in the case of *Harvey v. George J. Roche & Son,* 148 Md. 363, 129 A. 359, where a jury had determined that a widow living apart from her husband was wholly dependent upon him for support, this court, speaking through Chief Judge Bond, stated that there was a conflict of evidence on the claim of actual contributions by the husband, but as the wife had testified that these averaged $50 a month, and "that except for that she had no income or support other than board paid by two women who lived in the house," there was legally sufficient evidence for the finding of entire dependency by the wife. There is no affirmative evidence in this case that the appellee was at the time of the injury receiving anything more from the restaurant than an occasional meal or some clothing. She did partially own the place on which she lived, and she occasionally sold a few eggs. Her son also had a pig, which was butchered apparently for family use. The other son worked after school, and at times gave his mother wages, but at the time of the accident he was keeping his wages, and his mother apparently

did not know he was working. According to the first prayer of the employer and insurer, the refusal of which is made the subject of the fourth exception, if the appellee received any support from any source other than from the deceased, she was only partially dependent. This prayer is calculated to mislead the jury, because it does not define what is meant by support, and the jury might include as support, gratuitous contributions, or the trifling sale of eggs, or the interest in the home. We think that would be entirely too narrow a construction of the law. The Workmen's Compensation Act must be interpreted to effectuate its general purpose, and not by strict rules of construction. Code 1939, Art. 101, Sec. 78. A proper interpretation of the meaning of the statute can be found in the words of the Supreme Court of Minnesota in the case of *State ex rel. Splady v. District Court*, 128 Minn. 338, 151 N. W. 123, 124. "It may certainly be argued with some force that one who owns his home, or for whom others perform friendly services, is not, technically speaking, 'wholly dependent' upon the cash received from the wages of the worker of the family. Nor is one who receives help from a charitable organization, or from neighbors. But we cannot suppose that the Legislature intended that such a person should be considered only a 'partial dependent.' Giving the act a reasonable and liberal construction, our conclusion is that the trial court was justified in finding that plaintiffs were wholly dependent upon the deceased for their support." The trial court, in our opinion, was entirely correct in refusing to grant the prayer No. 1 of the employer and insurer, and in his statement to the jury that he did not think the legislature intended such an illiberal construction of the word "wholly" as contended for by the appellants.

The other objection made by the appellants to the charge of the trial court is that it improperly emphasized certain aspects of the testimony, wholly disregarded other evidence that might well have been considered by the jury, and was couched in such language

and given in such form as to defeat the right of the appellants to a fair and impartial trial. It is, of course, true that courts should be impartial in their review of the evidence, and if the trial court did show any bias or prejudice, or enlarge unduly upon one side of the case, the other side would be entitled to a new trial. The record in this case shows that the remarks of the trial court to the jury were not made at the close of the evidence, but were made after the jury had retired, and then returned to ask for further instruction from the court. There is, however, no more restriction upon the right of the court to instruct then, than there is upon his right to instruct before the jury retires for the first time. Under Rule 6, Part III of the General Rules of Practice and Procedure of this Court, it is provided that the trial court "may sum up the evidence, if it instructs the jury that they are to determine for themselves the weight of the evidence, and the credit to be given to the witnesses." The trial court in this case said he did not recall any testimony, "although I may be at fault and your memories may be better than mine," tending to show that the children attempted to do any work for anybody or got anything from anyone at all except their share of the eggs or perhaps the use of the meat of the pig. When he was asked about the $11 which it was claimed the appellee received from the restaurant, the trial court correctly summed up the testimony that she did get paid that amount for working, but that was discontinued in September, and according to her testimony, at the time her son was killed she was getting no wages and was not working for anybody. He added that the nearest approach to that would be the more or less intermittent service with more or less intermittent wages or gratuities "as you gentlemen may interpret it," from the occasional service at the restaurant. He also mentioned the testimony of the witness who said she saw her at the restaurant occasionally, but was unable to state whether she was an employee or a gratuitous helper. Then at the conclusion of his re-

marks, he definitely told the jury in the words we have already quoted, that he did not have a thing to do with determining the facts, and it was for the jury to determine the truth.

We are unable to find in what was said any partiality or prejudice, or any undue stress placed by the court on facts favoring the appellee. He gave a correct statement of facts produced in the evidence, and applied to these facts his conception of the law, which we have already stated we approve. It must be borne in mind that it is not the province of this court, nor was it its intention, when it adopted Rule 6, to prescribe any form in which the trial judge should instruct the jury. His words must necessarily be his own. Otherwise, his instructions would have to be couched in such general language, and in such formal terms as to amount to nothing more than an ordinary written prayer. The whole purpose and intention of permitting and encouraging oral instructions to the jury was to permit the judge, in ordinary language, to discuss the various aspects of a case, which he and the jury have both just heard, and with which they are both immediately familiar. Error will not be found in an oral charge merely because of its method of expression. There must be something else, which must cearly appear to have prejudiced the appellant. This whole subject has been recently discussed by this court, and we said, speaking through Judge Sloan, "We cannot put the trial judge in a strait jacket, and prescribe or adopt a formula to be used and followed by him." *Feingles v. Weiner*, 181 Md. 38, 46, 28 A. 2d 577, 581.

We find no error committed by the trial judge, either in his instructions as to the law, or his discussion of the facts, while interpreting that law, at the request of the jury. The judgment of the Court of Common Pleas of Baltimore City will, therefore, be affirmed.

*Judgment affirmed with costs.*