WATTS *v.* J. S. YOUNG COMPANY, ET AL.

[No. 20, September Term, 1966.]

278

 

*Decided January 27, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS and FINAN, JJ.

*Edward B. Rybczynski* for appellant.

*Thomas E. Cinnamond* for appellees.

BARNES, J., delivered the opinion of the Court.

Frank E. Watts, Sr. (claimant) appeals from an order of the Superior Court of Baltimore City affirming an order of the Workmen's Compensation Commission, which withheld an award to him for permanent partial disability of his right hand because the claimant refused to undergo an additional operation on the hand.

The claimant sustained an accidental injury to his right hand and wrist on October 28, 1963, while repairing one of the employer's machines. He was taken by ambulance to the Johns

Hopkins Hospital where the wound was cleaned and debrided and the tendons in his hand and wrist repaired. The claimant's hand was splinted for approximately five weeks. The Workmen's Compensation Commission awarded the claimant temporary total disability payments from November 1, 1963, through November 24, 1963. He returned to work on November 25, 1963.

In November, 1964, a wire or pin, used to repair the damage to the claimant's hand, was removed. There is no indication whether this procedure was contemplated when the original damage was repaired or was a distinct and separate corrective surgical procedure. After these operations and a substantial amount of post-operative physical therapy, the claimant was left with restricted motion in his right wrist and an inability to extend the fingers of his right hand. The claimant was discharged by the Johns Hopkins Hospital in April, 1965, eighteen months after the accident.

On January 29, 1965, the claimant was examined, at the request of the employer and its insurer, by Dr. Frederick C. Hansen, Jr., a hand specialist. Dr. Hansen recommended further surgery to repair the claimant's hand and wrist. His report stated his belief that "this patient is an excellent candidate for a surgical procedure." After this surgery, the claimant "would be unable to use his right hand in his work for five weeks and * * * would wear a splint which would partially limit the use of his right hand for another three weeks." The report also noted:

> "The patient was advised of the possibility that a complete correction might not be effected. However, there is certainly reason to think that he stands a chance of an excellent improvement and that his disability could be reduced to somewhere in the neighborhood of 5%."

Dr. Eli Lippman, an orthopedic surgeon, also examined the claimant at the request of his attorney on July 19, 1965. Dr. Lippman's report includes a discussion and diagnosis of the injury. It concludes: "With reference to additional surgery, the success would be very questionable."

The Workmen's Compensation Commission has authority to withhold an award if the claimant's refusal to undergo surgery is unreasonable. *McCulloh & Co. v. Restivo,* 152 Md. 60, 136 Atl. 54 (1927) ; *Schiller v. Baltimore & O. R. R. Co.,* 137 Md. 235, 112 Atl. 272 (1920). The claimant's intentional and unreasonable conduct breaks the chain of causation between his employment and the injury. To the extent that the claimant's disability is found to relate to his arbitrary refusal, it does not "arise out of his employment," Maryland Code, Article 101, sec. 15, and is non-compensable under the Workmen's Compensation statute.[1] 2 Larson, *Workman's Compensation Law,* sec. 13.22. The claimant concedes that the test of reasonableness applies where an award of temporary total compensation is discontinued because of a refusal to undergo surgery, *Schiller v. Baltimore & O. R. R. Co., supra,* but argues that the test does not apply to a denial of permanent partial compensation. This distinction is nowhere made in the cases on the subject, and we see no logical basis for it. The rationale, a break in the chain of causation between employment and injury, applies equally to both situations. As was noted in *McCulloh,* the duty of an injured employee to accept medical assistance which a reasonably prudent man would undergo extends to *"any disability,"* whether temporary or permanent in nature.

Much of the testimony and cross-examination before the Workmen's Compensation Commission was directed at showing whether the claimant actually feared the further operation recommended by Dr. Hansen, and whether the claimant's refusal to undergo additional surgery was based on a lack of "positive proof" that the outcome of the operation would be successful.

---

1. Some other jurisdictions have denied compensation for an unreasonable refusal to undergo surgery on the ground that an injured person must do what he can, within reason and safety, to minimize the damage, French v. Employers Mut. Liability Ins. Co. of Wis., 70 So. 2d 179 (La. App. 1954); Lesh v. Illinois Steel Co., 163 Wis. 124, 157 N.W. 539 (1916); Palloni v. Brooklyn-Manhattan Transit Corp., 215 App. Div. 634, 214 N. Y. S. 430 (1926). Donnelly v. William Baird & Co., Scotch Court of Session Cases (1908) 536. Some have statutory provisions specifically covering the point. See e.g., Ky. Rev. Stat. Ann. § 342.035 (1963); Idaho Code, § 72-401 (1949); 77 Pa. Stat. Ann. § 531 (Supp. 1965).

None of this evidence is particularly relevant to the question before the Commission and the lower court, namely: *Would a reasonably prudent man be expected to undergo the operation involved? McCulloh & Co. v. Restivo, supra; Schiller v. Baltimore & O. R. R. Co., supra.*

The test is one of reasonableness. It is an objective standard. The claimant's own fears and beliefs have no bearing on the test except as they relate to how a reasonable man would act under the same circumstances. In *McCulloh,* our predecessors indicated many of the factors to be considered in determining the reasonableness of a claimant's refusal to undergo further medical treatment: the chance of success and the benefit to be gained must be weighed against the risk to life and health and the pain and inconvenience involved in the treatment.

Applying this test objectively to the present case, we have no difficulty in affirming the decision of the court below. There was conflicting evidence as to the chance of success of further surgery. Dr. Lippman's report said success "would be very questionable." Dr. Hansen termed the claimant "an excellent candidate for surgical procedure."

The evidence was undisputed that the operation, if successful, would substantially benefit the claimant's condition. Dr. Hansen's report optimistically stated: "there is certainly reason to think that he [the claimant] stands a chance of an excellent improvement and that his disability could be reduced to somewhere in the neighborhood of 5%."

On the other hand, there was absolutely no evidence that the proposed operation presented any risk of life or that it was particularly dangerous. The claimant did testify that he might "wind up with a stiffer finger," but it is unclear from the record whether he received this information from a doctor who treated him at the hospital or merely expressed his own fears about further surgery.

There was no evidence that the claimant would experience abnormal pain as a result of the proposed operation. The proceedings below clearly established that the major inconvenience the claimant would suffer was the total loss of the use of his right hand for five weeks and the partial limitation of such use for three weeks more.

Upon this record, we can not say that the decision of the lower court, affirming the order of the Commission, was erroneous. The judgment of the Superior Court of Baltimore City will be affirmed.

*Judgment affirmed; the appellant to pay the costs.*