993 A.2d 120

Shannon M. WILSON

v.

SHADY GROVE ADVENTIST HOSPITAL, et al.

No. 2588 Sept.Term, 2008.

Court of Special Appeals of Maryland.

March 31, 2010.

Ari N. Laric (Chasenboscolo, Injury Lawyers, on the brief), Greenbelt, MD, for Appellant.

Jeffrey W. Ochsman (Todd S. Sapiro, Elizabeth B. Fisher, Friedlander Misler PLLC, on the brief), Washington, DC, for Appellees.

Panel: DAVIS, JAMES R. EYLER and MATRICCIANI, JJ.

DAVIS, Judge.

Appellant, Shannon Wilson, appeals from the judgment of the Circuit Court for Montgomery County in favor of appellees, Shady Grove Hospital and Sisco Insurance Company, finding that his left knee condition was not causally related to an earlier work-related accidental injury, reversing the decision of the Workers' Compensation Commission (WCC). On appeal, appellant presents this Court with two questions, which we have rephrased as follows:

I.   Did the trial court err in instructing the jury on the law of proximate cause in a workers' compensation case?

II.  Did the trial court err in submitting to the jury the issue of whether the left knee condition was proximately caused by a pre-existing back injury?

For the reasons that follow, we answer the first question in the affirmative and decline to reach the merits of the second question.   Accordingly, we reverse the decision of the circuit court.

## PROCEDURAL AND FACTUAL BACKGROUND

Appellant worked for appellee, Shady Grove Hospital, as a psychiatric technician.   His duties included monitoring psychiatric patients, recording their vital signs and progress and, from time-to-time, restraining the patients for their safety. On July 14, 2006, while restraining a patient, appellant fell to the ground and injured his right knee.   Accordingly, appellant sought and obtained treatment from Dr. James Weiss, an orthopedic surgeon.   Pursuant to Dr. Weiss' recommendation, appellant underwent surgery on his right knee in November 2006 and again in June 2007.   In May 2007, appellant began complaining of pain in his *left* knee and Dr. Weiss ordered an MRI of the left knee.

Appellant sought approval of the MRI of the left knee from the Workers' Compensation Commission.   A WCC hearing was held on March 31, 2008 on the issue of whether appellant's left knee injury was causally related to the work-related injury that occurred on July 14, 2006.[1]   Before the WCC, appellant testified that, after both of the surgeries to his right knee, he was required to wear a leg brace that immobilized his right leg which, he testified, caused him to favor his left leg, ultimately producing pain in his left knee due to overuse. Appellant also submitted the deposition testimony of Dr. Weiss, which we shall highlight *infra*.   On April 22, 2008, the WCC issued an Order, finding that "the disability of [appel-

---

1.  The WCC previously found the July 14, 2006 injury compensable.

lant's] left knee and medical treatment is causally related to the aforesaid [July 14, 2006] accidental injury." Accordingly, the WCC authorized the MRI of the left knee.

Appellees appealed the decision of the WCC to the Circuit Court for Montgomery County. A two-day trial was held from December 18, 2008 to December 19, 2008. The crux of appellees' case in the circuit court was that appellant's left knee injury was not causally related to the July 14, 2006 injury. In their opening argument, appellees asserted that appellant had suffered an earlier back injury in 2004 for which appellant had been receiving treatment from Dr. Weiss through 2008. As a result of that injury, appellant experienced numbness and pain running down his right leg and foot and, occasionally, his left leg. Appellees presented the expert testimony of Dr. John O'Donnell,[2] an orthopedic surgeon, who had examined appellant on multiple occasions. Dr. O'Donnell's opinion was that appellant's left knee pain was not causally related to "overuse" as a result of his compensation for his right knee injury. He testified, in pertinent part, as follows:

> Appellees' counsel: And Doctor, based upon your experience, your review of the medical records, the diagnostic studies, your physical examination of [appellant], do you have an opinion within a reasonable degree of medical probability as to whether the left knee complaints are causally related to the July 14, 2006 work injury involving a (unintelligible)?

> Dr. O'Donnell Yes.

> . . . .

> That they are not related.

> . . . .

> He wasn't—he didn't injure himself. He didn't injure his left knee on July 14, 2006. And he had, to my knowledge, no history of an injury on or about that time.

---

2. Dr. O'Donnell and Dr. Weiss' testimony were presented *via* videotape.

Appellees' counsel: And doctor, again, ... do you have an opinion as to whether or not [appellant's] left knee complaints are causally related to overuse after having surgery on the right knee, putting more pressure on the left knee, and that's the cause of his knee complaints?

Dr. O'Donnell: Yes, I do.... I don't believe it has anything to do with his right knee.

Dr. O'Donnell further testified that, in his opinion, due to appellant's right knee pain, appellant was more likely to have reduced his amount of physical activity in general. But he further testified that, even assuming that appellant did not decrease his activity, there was "no evidence in orthopedic literature that increasing activities is bad for you," and that orthopedists routinely send their patients to physical therapy post-surgery for the very purpose of increasing physical activity in order to strengthen muscles. Thus, Dr. O'Donnell concluded that he did not "believe that favoring the left knee because you can't put weight on the right would have any influence on this particular problem."

By contrast, appellant's expert witness and treating physician, Dr. Weiss, testified that appellant's left knee pain was causally related to the July 14, 2006 injury. Dr. Weiss testified, in pertinent part, as follows:

There's a couple of reasons. One is [appellant] has no known history of knee problems, at least none I've ever seen documented prior to his injury. And he developed left knee problems without any change in the status of his left knee problems without any change in his left knee, meaning there was no interceding injury to his left knee that I've ever seen documented. And that he has significant problems with his knee which has forced him to use his left knee to substitute for the function of his right knee to a significant extent and so the only conclusion I can come to is that he never had a problem with his knee before. He did not specifically have an interceding injury to his left knee, and he began to get symptoms in his left knee while he was favoring or trying to recover from his right knee.

So to me, the cause and effect is ... in that he has consistently complained of the transferring of stress to his left knee and resulting symptoms from his inability to use his right knee.

At the conclusion of the evidence, the parties disagreed as to the proper instruction to be submitted to the jury on causation. Over appellant's objection, the trial court instructed the jury as follows: "In this case causation means that [appellant's] work related injury of July 14, 2006, to his right knee, is a cause of the condition of his left knee." The jury then began its deliberations with a verdict sheet that posed a single question: "Is the disability of the claimant's left knee causally related to the July 14, 2006 injury?" The jury returned a verdict in favor of appellees. Appellant noted a timely appeal to this Court. Additional facts shall be supplied *infra* as warranted.

## STANDARD OF REVIEW

In addressing the standard of review that we shall apply in this appeal, we initially observe that this case reached the circuit court in the form of an appeal from the decision of the WCC. We have previously recognized that appeals from the decisions of the WCC may be reviewed by circuit courts through two different modalities:

"The practice is that appeals are presented to trial courts in one of two fashions: (1) the submission of the case to the judge on the basis of the record made before the Commission; or (2) a de novo evidentiary hearing before the court sitting with or without a jury."

*Bd. of Educ. v. Spradlin,* 161 Md.App. 155, 167, 867 A.2d 370 (2005) (quoting R.P. Gilbert and R.L. Humphrey, Maryland Workers' Compensation Handbook, § 17.4, p. 342 (2d ed. 1993)). The appeal in this case proceeded before the circuit court by way of the latter modality with a jury, which has come to be known as an "essential trial *de novo." Id.* at 189, 867 A.2d 370 (explaining that "[t]he reason for these differences between an essential trial de novo and a true trial *de*

*novo* is to be found in the provisions of [Md.Code (2008 Rep. Vol.), Labor and Employment, L.E. § 9–745(b)]").[3]

"[T]he *de novo* jury does not, as might an ordinary jury, render an ultimate verdict but only makes specific findings of fact on specific issues that are carefully framed and submitted to it." *Id.* at 190, 867 A.2d 370. On appeal in this Court, we do not disturb the jury's determinations of fact.

> [L.E. § 9–750] provides for appeal to this Court "as provided for other civil cases." ... Thus:
>
> 'The verdict of a jury on a question of fact is conclusive on appeal.' *Fowler v. Benton,* 245 Md. 540, 545, 226 A.2d 556 (1967). It is not our function to inquire into the weight of the evidence, rather, we determine only whether there was legally sufficient evidence to support the jury verdict. *Temoney v. State,* 290 Md. 251, 261–62, 429 A.2d 1018 (1981); *Gray v. Director, Patuxent Inst.,* 245 Md. 80, 84, 224 A.2d 879 (1966).'

*Keystone Masonry Corp. v. Hernandez,* 156 Md.App. 496, 506, 847 A.2d 493 (2004) (quoting *Fraidin v. Weitzman,* 93 Md. App. 168, 193–94, 611 A.2d 1046 (1992)). By contrast, when presented with questions of law, we engage in a *de novo* review. *Barnes v. Children's Hosp.,* 109 Md.App. 543, 553, 675 A.2d 558 (1996) (citing *Heat & Power Corp. v. Air Products & Chemicals, Inc.,* 320 Md. 584, 591, 578 A.2d 1202 (1990)). *See also Wholey v. Sears Roebuck,* 370 Md. 38, 48, 803 A.2d 482 (2002).

## LEGAL ANALYSIS

### I

▮ Appellant initially contends that the circuit court erred in instructing the jury on the law of causation in a

---

**3.** L.E. § 9–745(b) provides:

> Presumption and burden of proof.—In each court proceeding under this title:
>
> (1) the decision of the Commission is presumed to be prima facie correct; and
>
> (2) the party challenging the decision has the burden of proof.

workers' compensation case. Appellant submitted the follow-ing proposed instruction to the trial court: "In workers' compensation cases, proximate cause means that the accident could have caused the injury and no other efficient cause intervened between the accident and the injury." Opposing the requested instruction, appellees insisted that "the word 'could'" was problematic, "[b]ecause it does indicate that you can simply rule in that favor in terms of an uncertainty." The trial court, hesitant to confuse the jury, declined to give appellant's requested instruction, stating:

> [T]hat language was written for you and for me and for law professors to sort of think about all this. But in the requested instruction, if I give it, I have to define the word proximate, I have to define the word accident. I have to define the word efficient. I have to define the word inter-vening. Because they're going to say, "what is proximate cause," or "what is an accident," or "what is efficient," or "what does intervene mean?"

Thus, the trial court instructed the jury that "[i]n this case causation means that [appellant's] work related injury of July 14th, 2006, to his right knee is a cause of the condition of his left knee."

Appellant insists that the causation instruction employed narrower language than required in workers' compensation cases. Specifically, appellant takes issue with the trial court's substitution of the phrase "a cause" for "could have caused," and the omission of the qualifying language regarding the absence of an intervening cause. Appellant contends that the concept of proximate cause in workers' compensation cases is broader than it is in tort cases. Appellant further avers that the trial court's modified causation instruction had the effect of improperly shifting the burden from appellees to appellant. Appellees counter that the same concept of proximate cause applies in negligence cases and workers' compensation cases and that the instruction was proper.

In reviewing a jury instruction, we look to whether the instruction as a whole accurately stated the law. "It is well

settled that if, when read as a whole, the court's instructions to the jury clearly set forth the applicable law, there is no reversible error." *CSX Transp. v. Continental Ins. Co.,* 343 Md. 216, 240, 680 A.2d 1082 (1996) (citing *Nizer v. Phelps,* 252 Md. 185, 202–03, 249 A.2d 112 (1969); *Alston v. Forsythe,* 226 Md. 121, 135, 172 A.2d 474 (1961)). *See also Goldberg v. Boone,* 396 Md. 94, 122, 912 A.2d 698 (2006).

Pursuant to L.E. § 9–101(b), before the WCC, a claimant in a workers' compensation case must demonstrate a personal injury that "arises out of and in the course of employment." As former Chief Judge Richard P. Gilbert and Robert R. Humpreys, Jr., Esq. explain in the Maryland Workers' Compensation Handbook, not only must a claimant establish a work-related accident, but a claimant must also establish a causal relationship between the accident and the resulting injury.

> Among other things, a claimant must prove that the benefits which are being sought are causally related to the injury. The claimant must first establish the occurrence of a compensable accidental injury. Once that has been shown, the claimant next must prove that the consequences of the injury "naturally resulted therefrom [i.e., a compensable accident]...." It makes no difference whether the disability claimed to have resulted from the accident is usual or unusual. *If a probable relationship between the accident and the injury is shown, and no other intervening cause is likely to have precipitated the disability, the claimant has proven sufficient causal relationship* and eligibility for benefits which are appropriate to compensate for the resultant disability.

R.P. Gilbert and R.L. Humphrey, Maryland Workers' Compensation Handbook, § 7.02 (3d ed. 2007) (footnotes omitted) (emphasis added). In this case, it was agreed that the July 16, 2006 accident arose out of and occurred during the course of employment. Thus, the only contested issue was the causal relationship between the accident and the left knee condition.

In support of his contention that the causation instruction was erroneous, appellant directs our attention to *Continental Group v. Coppage,* 58 Md.App. 184, 472 A.2d 1014 (1984), a case in which this Court had occasion to review the evolution of the standard of causation in workers' compensation cases. In *Continental Group,* an employee sustained work-related injuries to his head and back and the WCC determined that he had a five percent permanent partial disability. *Id.* at 185, 472 A.2d 1014. Thereafter, the employee sought to reopen his claim because he began experiencing seizures that he claimed were causally related to the earlier accident. The WCC found no causal relationship. *Id.* at 186, 472 A.2d 1014. The employee appealed to the circuit court and a circuit court jury reversed the decision of the WCC, finding the seizures to be causally related to the earlier work-related injury. *Id.* The employer appealed to this Court, claiming that the trial court erred in instructing the jury on causation. *Id.*

The employer requested the following instruction:

For purposes of Workmen's Compensation, 'proximate cause' means that the result could have been caused by the accident, and no other efficient cause has intervened between the accident and the result. However, the possibility that injury caused the result for which workmen's compensation benefits are sought must amount to more than a guess and relation of accident to condition complained of in point and time of circumstance must not be mere fanciful, *since law requires proof of probable, rather than merely possible, facts, including causal relationship.*

*Id.* The trial court declined to give the requested instruction and instead instructed the jury as follows:

The law is that there must be a causal connection between the conditions under which the work is required to be done and the ensuing injury.

In this context, pro[x]imate cause means that, (1) the injury could have been caused by the accident; and (2) that no other efficient cause intervened between the accident and the result.

Proximate cause has further been defined as follows in one of the leading textbook authorities on Workmen's Compensation Law. In Pressman, on Workmen's Compensation, at page 409, under 'Proximate Cause', the author stated this: 'Proximate Cause means that the result could have been caused by the accident, and that no efficient cause has intervened between the accident and the result. But, such a possibility must amount to more than a guess. Medical testimony is not essential where, by other evidence, causal connection may fairly and logically be shown.'

*Id.* at 186–87, 472 A.2d 1014.

The employer contended that the trial court's failure to instruct the jury that "the law requires proof of probable rather than merely possible facts" was error. *Id.* at 187, 472 A.2d 1014. We affirmed the trial court, explaining that " . . . at least with respect to workmen's compensation cases, [the Court of Appeals] never intended to prescribe any special form in which the trial judge should instruct the jury." *Id.* (citing *Beth. Shipyward v. Sherpenisse,* 187 Md. 375, 382, 50 A.2d 256 (1946); *Larkin v. Smith,* 183 Md. 274, 284, 37 A.2d 340 (1944)). We explained that the Court of Appeals had previously established that " '[e]rror will not be found in an oral charge merely because of its method of expression.' " *Id.* (quoting *Larkin v. Smith,* 183 Md. 274, 284, 37 A.2d 340 (1944) (There must be something else, which must clearly appear to have prejudiced the appellant.)). Thus, as we did in *Continental Group,* we shall examine appellant's contention in the case *sub judice* "in that light." *Continental Group,* 58 Md.App. at 187, 472 A.2d 1014.

In reviewing the development of the law of causation in workers' compensation cases in *Continental Group,* we initially observed that the Court of Appeals has stated, " 'it would seem to be established in this state, in workmen's compensation cases, that 'proximate cause' means that the result could have been caused by the accident, and that there has not intervened, between the accident and the result, any other efficient cause.' " *Id.* at 188, 472 A.2d 1014 (quoting *Baber v.*

*Knipp & Sons,* 164 Md. 55, 67, 163 A. 862 (1933)). We further recognized that, in the later case of *Moller Motor Car Co. v. Unger,* 166 Md. 198, 170 A. 777 (1934), the Court of Appeals "added a bit" to the causation standard, stating, "[o]f course, such possibility must amount to more than a guess, and the relation of the accident to the death or condition complained of, in point of time and circumstance, must not be merely fanciful.'" *Id.* (citing *Moller Motor Car,* 166 Md. at 206, 170 A. 777).

Further, we explained that the Court of Appeals again had occasion to address the issue of causation in workers' compensation cases in *Paul Construction Co. v. Powell,* 200 Md. 168, 181, 88 A.2d 837 (1952), where the Court compared the standard to proximate cause in tort cases. *Id.* at 190, 472 A.2d 1014. We stated: "the concept or standard of proximate cause ... seemed to be broader in workmen's compensation cases." *Id.* We noted that the Court of Appeals ultimately summarized the test for proximate cause in worker's compensation cases as follows:

> "It is established in this State that in Workmen's Compensation cases proximate cause means that the result could have been caused by the accident and no other efficient cause has intervened between the accident and the result. Possibility that the injury caused the result must amount to more than a guess and the relation of the accident to the condition complained of in point of time and circumstance must not be merely fanciful.... The law requires proof of probable, not merely possible facts, including causal relationship."

*Id.* at 191, 472 A.2d 1014 (quoting *Reeves Motor Co. v. Reeves,* 204 Md. 576, 581, 105 A.2d 236 (1954) (internal citations omitted)).

Moreover, we pointed out that "[t]his basic concept has been restated on a number of occasions since *Reeves,* each time in slightly different language." *Id.* (citing *Baughman Contracting Co. v. Mellott,* 216 Md. 278, 283, 139 A.2d 852 (1958); *Bethlehem Steel Co. v. Jones,* 222 Md. 54, 58, 158 A.2d 621

(1960); *Montgomery County v. Athey,* 227 Md. 312, 314, 176 A.2d 766 (1962); *Atlas Gen'l Ind. v. Phippin,* 236 Md. 81, 89, 202 A.2d 767 (1964); *Yellow Cab Co. v. Bisasky,* 11 Md.App. 491, 504, 275 A.2d 193 (1971)). Although, as we recognized, the standard is sometimes stated in slightly different words, when evaluating the propriety of a causation instruction in a workers' compensation case,

> [t]he "bottom line" is this: the evidence must, at a minimum, establish beyond mere conjecture or guess that the injury could have caused the consequence and that there was no other intervening cause. If that thought is effectively conveyed to the jury, the omission to include the words "probable" or "reasonably probable" is not fatal.

*Continental Group,* 58 Md.App. at 192, 472 A.2d 1014.

The same proximate cause standard that we discussed at length in *Continental Group, supra,* is reflected in the commentary to the Maryland Civil Pattern Jury Instruction for Workers' Compensation Cases. MPJI–Cv 30:6 provides:

**Arising out of and in the Course of Employment**

An injury arises out of the employment if the injury results from some obligation, condition or incident of the employment.

An injury arises in the course of the employment if it happens during the period of employment at a place where the employee may reasonably be and while he or she is performing his or her work or some other activity reasonably related to his or her work.

Comment B to this instruction, entitled "Nexus or Proximate Cause," further provides, in pertinent part:

1. The nexus or proximate cause requires that:

(a) The injury could have been caused by the incident; and

No other efficient cause intervened between the incident and the result. *Baber v. John C. Knipp & Sons,* 164 Md. 55, 163 A. 862 (1933); *cf. Watts v. J.S. Young Co.,* 245 Md. 277, 225 A.2d 865 (1967) (unreasonable refusal to undergo surgery is an intervening cause).

Despite the fact that this Court and the Court of Appeals have previously recognized that the causation standard is broader in workers' compensation cases, appellees contend that "this is simply not true." Instead, appellees cite *Board of Trustees v. Powell*, 78 Md.App. at 568, 554 A.2d 440, for the proposition that there must be "a definite causal connection between the injury and the job," therefore "this standard is the same in both workers' compensation cases and negligence cases." A closer examination of the cited portion of *Board of Trustees, supra*, exposes a flaw in appellees' position. The very next sentence after the portion quoted by appellee in *Board of Trustees* is a quote from *Paul Construction Co. v. Powell*:

> The law requires proof of probable, not merely possible, facts, including a causal relationship. Reasoning *post hoc, propter hoc* is a recognized logical fallacy, a *non sequitur.* But sequence of events, plus proof of possible causal relation, may amount to proof of probable causal relation, in the absence of evidence of any other equally probable cause.

*Board of Trustees*, 78 Md.App. at 568, 554 A.2d 440 (quoting *Paul Construction Co. v. Powell*, 200 Md. 168, 181, 88 A.2d 837 (1952)). Notably, *Board of Trustees* cites the very same cases that we summarized in *Continental Group, supra*, on the proximate cause standard in workers' compensation cases.

We agree with appellant that the causation instruction given in the case *sub judice* was erroneous in that it defined causation in a manner inconsistent with workers' compensation law in Maryland. Although the trial court instructed the jury on the presumption of correctness of the WCC decision, the causation instruction, in essence, directed the jury that appellant had the burden of proving that the accident was a cause in-fact of the left knee condition, without any mention of the consideration of intervening causes. Appellant aptly points out that, before the WCC, he presented testimony that the 2006 work-related right knee injury could have caused the left knee condition and that there were no intervening causes. Accordingly, appellant presented the same case in the circuit

court on appeal, using the same expert testimony. Because the WCC decision is presumed to be *prima facie* correct, appellant argues that, on appeal, it was appellees' burden to prove that the WCC decision should be reversed because (1) the 2006 right knee injury could not have caused the left knee condition or (2) there was another intervening cause. L.E. § 9–745(b). This burden was not adequately conveyed through the causation instruction. Thus, we find merit in appellant's contention that the causation instruction prejudiced appellant. The instruction went to the heart of the only issue submitted to the jury, the causal relationship between the work-related accident and injury on July 14, 2006 and the left knee condition. Accordingly, we reverse the judgment of the trial court.

## II

█ Appellant next contends that "there was insufficient evidence to submit the issue of whether the left knee condition was proximately caused by a back condition to the jury." Appellant argues that the causal relationship between appellant's 2004 back injury and appellant's subsequent right knee injury is a complex medical issue; thus, under *American Airlines Corp. v. Stokes,* 120 Md.App. 350, 355–56, 707 A.2d 412 (1998) and *S.B. Thomas, Inc. v. Thompson,* 114 Md.App. 357, 382, 689 A.2d 1301 (1997), appellees should have been required to adduce expert testimony in order to submit such evidence to the jury for its consideration. Appellees counter that this question was never submitted to the jury and it is, therefore, irrelevant to this appeal. Instead, appellees explain that they elicited testimony and made argument about whether Dr. Weiss considered the pre-existing back injury in assessing the causation of the *right* knee injury.

Initially, we point out that the only evidence introduced at trial, aside from appellant's own testimony, was the expert testimony of Dr. O'Donnell and Dr. Weiss. Neither doctor testified that there was a causal relationship between appel-

lant's 2004 back injury and appellant's left knee condition.[4] Appellant himself testified on cross-examination that he sustained an injury to his lower back in 2004 and that, since that injury, until he sustained an injury to his right knee in 2006, he experienced weight-bearing difficulty and numbness going down both his right and left legs. Appellees' counsel elicited similar testimony from Dr. Weiss on cross-examination.

Appellant contends that he objected "four times through trial," during appellees' opening statement, after appellees' opening statement, prior to appellees' case-in-chief and at the conclusion of appellees' case-in-chief to preserve this issue for our review.[5] Notably, at the conclusion of appellees' opening argument, when appellant renewed his objection to appellee's argument that appellant suffered from pain and numbness in his legs as a result of a back injury, the trial court made the following statement to appellant's counsel:

> Well, what I'm going to do is I'm going to listen very carefully to the testimony of all the doctors and I will review very closely the medical records and if it should turn out, after the evidence comes in, that there's no basis for the contention then *you'll ask me for an instruction to the jury and I'll probably give it.*

(Emphasis added).

Thereafter, prior to appellees' case-in-chief, appellant again renewed his objection to appellees' "alternate theory of causation."[6] Appellees argued, in essence, that they planned to elicit, through cross-examination of Dr. Weiss, that it was

---

**4.** In fact, Dr. Weiss testified that he could not "make a causal connection" between the left knee condition and the lower back condition.

**5.** Appellant refers this Court to two cites in the record extract in support of this contention, but these pages only contain a single objection made during appellees' opening argument on the issue of the relevance of the back injury and the resulting numbness and pain in appellant's legs.

**6.** Appellees contend that their argument was not an alternate theory of causation but merely a basis for impeachment of Dr. Weiss' testimony, as we shall explain *infra.*

unreasonable not to consider appellant's back pain in assessing the causation of appellant's knee pain. The trial court ruled that it was "fair game for cross-examination."

Finally, outside of the hearing of the jury, at the conclusion of appellees' case-in-chief, appellant again objected, stating that "[appellees] did not put on any evidence that the back pain or radiculopathy has anything to do at all with [appellant's] left knee condition." Appellees responded:

> [T]he issue as to the back, all along, is to show the fallacy of Dr. Weiss' position in light of Dr. O'Donnell's position that the studies done show that there is no basis for claiming that favoring a right leg because of an injury causes an injury to the opposing leg. And if indeed Dr. Weiss was in any way correct, and this is the whole issue with the pain, the weakness, and the numbness down the legs from the back injury, which he's still been complaining about . . . if indeed he had difficulty weight bearing, which the claimant himself has testified to, then the injuries—it would seemingly be logically impossible for Dr. Weiss not to come to the conclusion that the back injury had something to do with this left knee after a two to three year period of time of having mostly unilateral leg pain, and then with a switch to the left side.

The trial court inquired as to whether Dr. Weiss would testify as to his opinion on the causal relationship between the back injury and the left knee condition and appellant stated that Dr. Weiss' opinion was that they were not causally related. Accordingly, the trial court overruled the objection.

Appellant did not object to appellees' cross-examination of Dr. Weiss regarding appellant's numbness in his legs and feet resulting from the 2004 back injury. Additionally, through all of the discussion of the proper jury instructions in the case *sub judice,* appellant never requested an instruction on the issue of the back injury, despite the trial court's earlier invitation to do so. Presumably, this was because appellees elicited testimony to support their contentions during opening statements that appellant had in fact suffered a back injury in

2004 which caused numbness and weakness in appellant's legs leading up to the July 2006 work-related accident and continued through 2008. Ultimately, appellant failed to object to appellees' closing argument. Appellees made the following argument:

> What's fascinating, ladies and gentlemen, is that [appellant] continues with the treatment as to the back, the knee, and the knee through 2007.
>
> . . . .
>
> Dr. Weiss comes to the conclusion that because the left knee became symptomatic while he was treating [appellant] for the right leg, the right leg therefore is the cause of the left leg.
>
> . . . .
>
> Interestingly, at no point in time did Dr. Weiss ever explain why a person with a two-year history of pain and numbness going down their leg all the way to their right foot with weakness in the calf muscle, below the knee, with weakness going down the left leg on occasion. Why that person . . . why a two year history of walking around on a painful right leg, sometimes the left leg, wasn't the cause of his problems with his right knee.
>
> . . . .
>
> Now, Dr. Weiss at no time explains that, if a person had a long term weakness and pain in a leg, why would they not develop a problem in the alternate leg. No, he simply says very flat out, no studies, no nothing, "I believe it's related to overuse."

We decline to reach the merits of appellant's contention because appellant failed to preserve this issue for our review. Md. Rule 8–131(a); *Robinson v. State,* 410 Md. 91, 103, 976 A.2d 1072 (2009); *State v. Bell,* 334 Md. 178, 189, 638 A.2d 107 (1994). Assuming, *arguendo,* appellant had properly preserved this issue for our review, we would nonetheless find the argument meritless because appellees did not elicit evidence that the 2004 back injury was causally connected to the *left* knee condition. Rather, as appellees argued and the trial

court properly determined, appellees elicited evidence of the pre-existing back injury as a means of impeaching the credibility of Dr. Weiss' medical opinions as to the cause of appellant's right knee injury, which Dr. Weiss' testified was, in turn, the cause of the left knee condition. Appellant's reliance on *American Airlines, supra,* is misplaced as appellees (1) adduced expert testimony that the left knee condition was not causally related to overuse and (2) Dr. Weiss did not consider the pre-existing back injury in assessing the causation of appellant's right knee injury.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**