In the Matter of the Claim of JAMES PRENTICE, Respondent, against HARRY H. WEEKS and Another, Appellants. STATE INDUSTRIAL BOARD, Respondent.*

Third Department, November 14, 1933.

*Frank L. Ward* [*F. E. Coursen* of counsel], for the appellants.

*John J. Bennett, Jr.*, Attorney-General [*Joseph A. McLaughlin* and *Hector A. Robichon*, Assistant Attorneys-General, of counsel], for the respondents.

HILL, P. J. The employer and carrier appeal from a disability award for the period July 21 to October 4, 1932. Claimant, while working for the employer herein, on June 15, 1931, fell about twenty feet, fractured a vertebra and injured his left thigh and knee. He received treatment in a hospital. An examination in March, 1932, disclosed a flabby musculature of the left thigh

---

* Affd., 264 N. Y. ——.

with some atrophy, fluid in the left knee and tenderness about the patellar ligament. On June 2, 1932, the left knee was operated upon. The employer paid compensation without awaiting an award, and continued it from the date of the accident to July 24, 1932. The original injury and disability is not questioned. Appellants assert that disability after August 6, 1932, was occasioned by a second accident on that day, unrelated to the accident of June 15, 1931. The claimed second accident happened while claimant, walking a short distance across wet grass, slipped and fell, further injuring the knee. A physician says: " The knee joint had been opened two months previous to the accident [August 6] and you cannot open a joint — you cannot open a joint and have it strong in two months. The weakened condition of the knee at that time was responsible for his accident. * * * If his kneecap was strong it would not have ruptured as it did. * * * Whether he had fallen or not it would not have ruptured if it was strong. He was following advice. He was advised to be up and around, which was good advice, but the knee was not in condition to stand the small strain. Q. In your opinion would there have been any injury to the leg due to the fall [August 6] if it had not been in a weakened condition before? A. No, no sir. Q. What condition is the leg in now? A. Ruptured his internal ligaments at the site where they had been recently opened and in rupturing this ligament it pulled up a piece of the end of the femur bone." The above and other evidence of similar import justified the Board in determining that the condition following August 6, 1932, was attributable to the accident and injury of June 15, 1931.

The award should be affirmed.

RHODES, CRAPSER and HEFFERNAN, JJ., concur; McNAMEE, J., dissents, with an opinion.

McNAMEE, J. (dissenting). The claimant suffered two injuries, one on June 15, 1931, and another on August 6, 1932. He was a clerk and chauffeur for an undertaker at the time of the first accident, and was injured in the course of his employment, when he fell from a porch, a distance of about fifteen feet. He seriously injured his back, and also his left knee, but the latter injury was not discovered until leaving the hospital some months later. An operation was performed on the knee on June 2, 1932, and from this his convalescence was satisfactory, but he had not yet returned to work.

The question presented on this appeal is whether there is causal relation between the injury of June 15, 1931, and the accident of

August 6, 1932; or, in the words of the statute, whether the second injury arose out of and in the course of his employment.

There was no witness to the second accident, except the claimant himself. He testified that he was walking in his own yard to reach his automobile, which was five or six feet away; that his right foot slipped on an irregularity in the surface of the ground, where the grass was wet; that when his right foot slipped it struck his left foot (the one previously injured), and knocked it from under him; that he fell sidewise and struck his left knee, and injured the inside ligament of that knee. He also testified that he had been up and around for several weeks after the operation on his knee, but could not " handle " his left leg as formerly; that his left leg was weak and that he was favoring it; he testified repeatedly that he not only slipped with his right foot (the one not previously injured), but that the slipping was the primary cause of his injury.

The only medical witness as to the second injury was Doctor Martin. The doctor had not seen the claimant for two months before the second accident, and stated that he did not know the condition of the left knee during that period. He testified, however, that following such an operation as was performed on claimant's left knee, it could not be strong in two months, and that there was a lessened control in its use; and that if the knee had been stronger it would not have been injured so severely. The doctor gave his opinion that the claimant did not slip because the left knee gave away.

The foregoing are all the facts that appear from the evidence, although in addition to this testimony, the referee permitted or required the claimant to give his opinion to the effect that if the left knee were in good condition he would not have fallen; that the claimant thought that the condition of the left knee and his inability to bring his leg around were the cause, or in part the cause, of the fall. In like manner, he permitted the doctor to state that the condition of the knee was responsible for the accident; and if the knee had been stronger it would not have ruptured the ligament, whether the claimant fell or not. It cannot be said that these conclusions of the claimant or of the doctor were legal evidence of any fact; and it may be further observed that the conclusion of the doctor that the accident would not have occurred except for the condition of the knee, is negatived by all of the direct and competent proof on that point in the case.

From all of the competent testimony it appears that there were two separate accidents, bearing no relation to each other. No fact is testified to to indicate that the second accident happened

because of the first injury. As above noted, from claimant's own testimony (the only proof of the second accident) it appears conclusively that claimant's good foot slipped while and because he was walking on the wet grass, on irregular ground, and this good foot rendered the poor foot useless by knocking it from under him, precisely as it could have happened if both limbs were unimpaired. To say that he would not have fallen if one knee was as strong as the other is the sheerest speculation; or to say that the condition of the left knee was the cause of the fall is to contravene the only competent proof on the question; and, as a matter of common knowledge, most people slip and fall when both legs are in good condition. In this case it was the sound foot that gave away and brought about the accident. If there were proof that the claimant slipped because of a defect in the injured knee, it might then be said that the second accident was related to the first injury. But no such proof has been pointed out.

The Industrial Board found that the claimant fell after slipping, " because of the weakened, unstable condition of the left knee," and that, therefore, " he was unable to regain his balance, or get his injured foot into position to prevent falling," and that claimant's " disability naturally and unavoidably resulted from the consequences of the accident of June 15, 1931." I am unable to find any evidence in the case to warrant those conclusions, or to make such inferences reasonable. The fact seems to be that there is no competent evidence to that effect.

The case now under consideration is very different from the one in which an arm parted in September, which had been broken in May, in the performance of an ordinary task, and where no accident would have occurred were it not for the earlier break. (*Phillips* v. *Holmes Express Company*, 190 App. Div. 336; affd., 229 N. Y. 527.) And so is it unlike an injury arising from vertigo which was the result of an earlier accident. (*Colvin* v. *Emmons & Whitehead*, 216 App. Div. 577.) So is it unlike the case of a claimant whose pelvic bone was broken, and which broke again a few months later, while under the unusual strain of carrying a heavy timber, with no other attendant accident. (*Anderson* v. *Babcock & Wilcox Co.*, 256 N. Y. 146.)

On the contrary, this case is more similar in principle to the case of the claimant whose sternum was broken, and later while holding a heavy article *slipped*, and again fractured the sternum. There the court held that it was the slipping which constituted the accident, and was the new and proximate cause of the injury, without which the injury would not have occurred. There the court said: " There is no finding that any condition due to the first

injury caused him to slip and none such would be justified by the evidence. The most that can be said is that the consequences were more serious because of his physical condition." (*Blackley* v. *Niagara Roofing Co.*, 225 App. Div. 432.)

In the present case the claimant was not in the service of his employer when the second accident occurred, nor is there any competent proof that he slipped because of any defect arising from the first injury, or that he fell because he had suffered a prior injury. The case is barren of such proof.

The award should be reversed and the claim dismissed.

Award affirmed, with costs to the State Industrial Board.