In the Matter of the Claim of GEORGETTA BROWN, Respondent, against NEW YORK STATE TRAINING SCHOOL FOR GIRLS et al., Appellants.

STATE INDUSTRIAL BOARD, Respondent.

Submitted January 8, 1941; decided March 6, 1941.

*George J. Hayes* and *William F. O'Rourke* for appellants.

*John J. Bennett, Jr.,* Attorney-General (*Roy Wiedersum* of counsel), for State Industrial Board, respondent.

*Edward H. Best* for claimant, respondent.

LEWIS, J.  An award of statutory compensation is sanctioned by the Workmen's Compensation Law (Cons. Laws, ch. 67) only in the event of proof that the act which caused the disability or death of the employee was " * * * one of the risks connected with the employment, flowing therefrom as a natural consequence and directly connected with the work." (*Matter of Heitz* v. *Ruppert*, 218 N. Y. 148, 152.  See, also, *Matter of Connelly* v. *Samaritan Hospital*, 259 N. Y. 137, 141.)

We apply that test to the record at hand from which it appears that the claimant's husband met his death when, in an effort to alleviate pain following an operation made necessary by a compensable injury, he mistakenly swallowed a bichloride of mercury tablet instead of a tablet containing a mild sedative which had been prescribed by his surgeon.

The decedent, while employed as a farm laborer at the State Training School for Girls at Hudson, New York, sustained a crushing injury to his right foot on November 20, 1935.  Six months thereafter, on May 26, 1936, the onset of osteomyelitis made necessary the amputation of the terminal phalanx of the right great toe.  Post-operative treatments continued until June 16, 1936, when he was discharged by his surgeon by whom we are told that "The wound was [then] closed over.  No other dressings were necessary."  At that time a sedative tablet was prescribed "which may have been aspirin for pain or it may have been a nerve sedative."  At no time following the amputation did the decedent's surgeon prescribe bathing the right foot in bichloride of mercury solution, nor did the decedent inform his surgeon that he was using such a solution.  It appears, however, that on an occasion in 1930 — five years prior to the amputation mentioned above — the decedent had suffered an injury to the same foot which had then become infected.  On that prior occasion the same surgeon — who five years later performed the operation following the injury suffered in 1936 — had treated the decedent and had pre-

scribed in 1930 the application of wet dressings of bichloride of mercury solution to the area then infected. At that time bichloride of mercury tablets were dispensed to the decedent in an envelope which was labeled " Poison " and upon which the surgeon wrote directions for preparing the solution to be used " locally as a wash." From these antecedent facts we pass to events in 1936 which led to the decedent's death.

On June 21, 1936, five days after the decedent had been discharged by his surgeon following the amputation which had taken place on May 26, 1936, he experienced pain in his right leg and foot. During the day he took the sedative tablets which his surgeon had prescribed and before retiring for the night he bathed his foot in hot water.

Early the following morning, after a night of pain, the decedent called his wife, the present claimant, and asked her to summon a doctor. He then said to her, " I believe I have taken the wrong tablet * * * I believe I have taken the mercury tablet." His surmise proved to be correct. Instead of taking the sedative tablet, which had been prescribed for pain, he had taken one of the bichloride of mercury tablets which had been in a medicine cabinet with other medicines for the period of five years since his prior injury in 1930. The decedent's death followed within five days and concededly was due to bichloride of mercury poisoning.

The award made to the claimant by the State Industrial Board, which has been affirmed by the Appellate Division, one justice dissenting, rests upon findings that " The taking of this bichloride of mercury tablet by mistake, the painful injury to his right foot as aforesaid, and the attempt to minister thereto by taking the bichloride of mercury tablet by mistake to alleviate said pain, flow directly from and were the result of his employment as aforesaid, and were related to the said accident of November 20, 1935, and his death was the result of the said accidental injuries * * * and arose out of and in the course of his employment."

We find in the record no evidence which gives support to such findings. The facts here differ from those upon which rests the decision in *Matter of Ruzsjak* v. *Metal Stamping Co.* (234 App. Div. 642; affd., 259 N. Y. 575), upon which the respondents rely. There the claimant's husband had suffered in an industrial accident the loss of four fingers of each hand. More than a year later, while bathing his injured hands in hot water to relieve pain, the decedent fell to the floor sustaining head injuries which brought on a general paresis and caused his death. A close examination of the record in that case discloses, however, that the decedent struck his head upon the floor when he swooned by reason of the intense pain which related itself directly to the prior industrial accident. Likewise in *Matter of Chiodo* v. *Newhall Co.* (228 App. Div. 740; affd., 254 N. Y. 534) and *Matter of Prentice* v. *Weeks* (239 App. Div. 227; affd., 264 N. Y. 507), cited by the respondents, there was in each case proof of a direct relation, without an intervening cause, between the first industrial accident and the later injury sustained by the claimant for which an award of compensation was granted.

In the case at bar we find no evidence that the accident which befell the decedent on November 20, 1935, and the amputation which followed, were sufficient to derange the decedent's mind or to affect his eyesight. (Cf. *Matter of Delinousha* v. *National Biscuit Co.*, 248 N. Y. 93, 95, 96.) True, he had suffered pain throughout the day and night which preceded his fatal mistake. But proof of pain, standing alone, does not permit the implication that such a derangement had taken place as would have caused the decedent to make the mistake which took his life.

The proof is not disputed that an independent act by the decedent intervened to cause his death. His fatal act of taking internally a bichloride of mercury tablet, instead of the mild sedative prescribed for his use, did not relate itself to the accident which he sustained on November 20, 1935. Following such independent act by the decedent there remained intact no chain of causation between his accidental injury and the fatal consequences of his mistake.

Having tested the record by the rule first quoted above, we cannot say that the decedent's death was a natural consequence of the risks incidental to his employment; nor was it directly connected with his work. (*Matter of Heitz* v. *Ruppert, supra,* p. 152.)

Finding no evidence that his death resulted from an accidental injury arising out of and in the course of employment (Workmen's Compensation Law, § 2, subd. 7; § 10) the order of the Appellate Division should be reversed, the award of the State Industrial Board vacated, and the claim for death benefits should be dismissed, with costs in this court and in the Appellate Division against the State Industrial Board.

LEHMAN, Ch. J., LOUGHRAN and FINCH, JJ., concur; RIPPEY, CONWAY and DESMOND, JJ., dissent.

Ordered accordingly.