672 A.2d 1110

**MACKIN & ASSOCIATES**

**v.**

**Dean A. HARRIS.**

**No. 109, Sept. Term, 1994.**

Court of Appeals of Maryland.

March 11, 1996.

**2**

David O. Godwin, Jr. (Montedonico, Hamilton, & Altman, P.C., all on brief) Frederick, for Petitioner.

John Noble (Alexander J. Crow, Noble and Crow, P.A., all on brief) Rockville, for Respondent.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and JOHN F. McAULIFFE, Judge, (Retired) Specially Assigned.

JOHN F. McAULIFFE, Judge, Specially Assigned.

The claimant in this Workers' Compensation case, Dean A. Harris, suffered a compensable injury in 1989 while employed by Mackin & Associates. An award was passed in his favor, and he was provided with appropriate benefits by Mackin and its insurer (hereinafter, collectively, Mackin). Subsequently, Harris terminated his employment with Mackin and engaged in a business of his own. In 1993, while self-employed, Harris suffered injuries when he slipped on a patch of ice and fell. Harris requested the Workers' Compensation Commission to order Mackin to pay additional benefits connected with the subsequent accident because, he said, the fall occurred while

he was on his way to the office of a physical therapist to receive treatment for the earlier compensable accident. Thus, argued Harris, the second accident was a consequence of the first and should likewise be compensable.

The Workers' Compensation Commission denied the claim. Harris appealed to the Circuit Court for Montgomery County and that court entered summary judgment in favor of Mackin. Harris appealed to the Court of Special Appeals, and that Court reversed. *Harris v. Mackin*, 100 Md.App. 363, 641 A.2d 938 (1994). This Court granted Mackin's petition for certiorari, and we shall reverse the judgment of the intermediate appellate court, finding that there is no legally sufficient nexus between the first accident and the subsequent accident to support an additional award of compensation.

■ The Maryland Workers' Compensation Act requires an employer of a covered employee to provide compensation for "an accidental injury that arises out of and in the course of employment ... or a disease or infection that naturally results from an accidental injury that arises out of and in the course of employment." Maryland Code (1991 Repl.Vol.), §§ 9–101 and 9–501 of the Labor & Employment Article. Mackin asserts that the 1993 accident could not have arisen out of Harris's employment with Mackin because at the time of that accident Harris was self-employed. Harris responds that the 1993 accident naturally resulted from the 1989 accident because, but for the 1989 accident he would not have been required to go to the therapist in 1993, and but for the requirement of that visit he would not have fallen on the ice at that time and place.

Mackin is correct that, standing alone, Harris's 1993 accident could not have arisen out of and in the course of his employment with Mackin. As Judge Harrell pointed out for the Court of Special Appeals in a case involving a similar employment situation:

[T]he Claimant was not employed by the Employer in any capacity when he suffered his heart attack. His employment had been terminated approximately three years be-

fore. . . . Because he was not the Employer's employee at the time of the injury, the injury simply could not have arisen out of and in the course of his employment.

*Huffman v. Koppers Co.*, 94 Md.App. 180, 186, 616 A.2d 451 (1992), *affirmed*, 330 Md. 296, 623 A.2d 1296 (1993).

In *Huffman*, the claimant suffered a heart attack while being deposed by his employer during the pendency of the employer's appeal of an award in favor of the claimant. The Court of Special Appeals assumed, *arguendo*, that the stress of appearing at the deposition contributed to the heart attack but affirmed the denial of benefits, holding there was an insufficient link between the original employment and the subsequent heart attack.

This Court has recognized that a subsequent injury caused by an earlier industrial accident may be compensable even though the subsequent injury occurred when the claimant was not pursuing the employer's business in the ordinary sense of the word. *See, e.g., Great A. & P. Tea Co. v. Hill*, 201 Md. 630, 95 A.2d 84 (1953) (evidence sufficient to show that non-industrial fracture of leg was caused by compensable fracture three years earlier); *Unger & Mahon v. Lidston*, 177 Md. 265, 9 A.2d 604 (1939) (jury question whether industrial injury to ankle was cause of fall and fracture of hip nine days later). In considering the question of causation in *Lidston*, the Court quoted from *Bramble v. Shields*, 146 Md. 494, 506, 127 A. 44, 48 (1924), as follows:

But in cases arising under the Workmen's Compensation Law the question of negligence is excluded, and with it the rule as to reasonable and probable consequence would also be excluded, if such rule were applicable here. The only test is: Did the accidental injury arise out of and in the course of employment? If it did, it makes no difference whether it was a normal or abnormal occurrence and so with 'and such disease or infection as may naturally result therefrom.' It can make no difference whether the results are usual or unusual, if there is a direct causal connection

between the injury and the disease, so that the disease is directly attributable to the injury.

177 Md. at 269, 9 A.2d 604. And, quoting from *Baber v. Knipp & Sons,* 164 Md. 55, 67, 163 A. 862, 867 (1933), the Court said:

It would seem to be established in this state in workmen's compensation cases that 'proximate cause' means that the result could have been caused by the accident and that there has not intervened, between the accident and the result, any other efficient cause.

*Lidston,* 177 Md. at 269, 9 A.2d 604. More recently, in *Young v. Hartford Accident & Indemnity,* 303 Md. 182, 492 A.2d 1270 (1985), involving a claim that the claimant's suicide was caused by an earlier compensable injury and its sequelae, this Court described the appropriate test in consequential injury cases as one of "proximate cause," *id.* at 191, 492 A.2d 1270, and concluded:

Consequently, the allegations set forth an unbroken chain of proximate causation which continues from the emotional trauma suffered in the assault arising out of and in the course of Young's employment on to and through the attempted suicide. Under Young's pleading the injuries suffered in the suicide attempt are an aggravation of the work-related injury.

*Id.* at 193, 492 A.2d 1270.

Similarly, complications flowing directly from treatment of a compensable injury are covered by the Act, even if the complications result from negligent medical treatment. *See Nazario v. Washington Adv. Hosp.,* 45 Md.App. 243, 412 A.2d 1271 (1980). This principle is, of course, entirely consistent with the concept of proximate cause that ordinarily applies in tort cases to hold an original tortfeasor responsible not only for injuries caused but also for the consequences of negligent treatment of those injuries. *Cf. Morgan v. Cohen,* 309 Md. 304, 310, 523 A.2d 1003 (1987).

In 1 Larson, *The Law of Workmen's Compensation* § 13.11 (1993) the author states:

> The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury.

As Professor Larson points out, ordinary rules of proximate cause must be modified for application to original injury workers' compensation cases, because contributory negligence is not an intervening cause that will break a chain of causation in a compensation case, and because adherence to the statutory criteria of "arising out of and in the course of employment" may produce results that would differ from those flowing from the application of a traditional proximate cause standard. Larson, *supra*, § 6.60.

With respect to consequential injuries, Professor Larson recognizes that these injuries may not readily fit ordinary concepts of proximate cause or the statutory requirement that the injury arise out of and in the course of the employment. He suggests that consequential injuries should ordinarily be compensable unless caused by intentional conduct of the claimant that is expressly or impliedly prohibited by the employer. Larson, § 13.11(d). To accomplish this end, Professor Larson recommends adoption of a concept of "quasi-course of employment," described as follows:

> Since, in the strict sense, none of the consequential injuries we are concerned with are in the course of employment, it becomes necessary to contrive a new concept, which we may for convenience call 'quasi-course of employment.' By this expression is meant activities undertaken by the employee following upon his injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury. 'Reasonable' at this point relates not to the method used, but to the category of activity itself. . . . Quasi-course activities in this sense would include, for example, making a

trip to the doctor's office and reaching for aspirin in the medicine cabinet.

*Id.* (Footnote omitted.)

Applying this concept to the category of secondary injury cases involving accidents that occur while going to or coming from a doctor's office or a rehabilitation activity, Professor Larson concludes that the "better view" is to hold such accidents compensable as a consequence of the first accident. *Id.* at § 13.13. He concedes that the case for compensability is made stronger if the journey takes place immediately after the first injury occurs, or where the prior injury itself contributes to the happening of the second accident, but concludes that even in the absence of those factors, the second accident should be compensable. In so stating, Professor Larson approves the rationale employed by the Supreme Court of Kansas in *Taylor v. Centex Construction Company*, 191 Kan. 130, 379 P.2d 217 (1963).

> The [Kansas] court noted that the employer is under a statutory duty to furnish medical care, and that the employee is similarly under a duty to submit to reasonable medical treatment under the act. The provisions of the act, in turn, become by implication part of the employment contract. This being so, the better view appears to be that accidental injuries during a trip made pursuant to this statutory and contractual obligation are work connected.

Larson, § 13.13.

A number of courts—perhaps a majority of those addressing the issue—have accepted the approach suggested by Professor Larson. See the cases collected at Larson, *supra,* § 13.13, notes 41–47. We are in general agreement with the basic rule advocated by Professor Larson—that a subsequent injury is compensable if it is the direct and material result of a compensable primary injury. We do not agree, however, that this concept of causation should be extended to embrace every subsequent accident that may occur while going to and coming from a doctor or other health care provider or obtaining or taking medication for an original compensable injury. More

specifically, we hold that under the facts of this case, the fall on ice while going to a therapist's office for treatment of a compensable injury suffered three years earlier with a former employer is not a direct and natural result of the earlier injury.

Professor Larson's approach to causation in consequential injury cases appears to rely heavily, if not almost exclusively, on the "but for" test; but for the first injury and the need for treatment therefor, would the second accident have occurred? The "but for" test has some value in the determination of causation. If a set of facts cannot pass the "but for" test, causation in fact is ruled out. The converse is not true—if a fact situation passes the "but for" test, the requisite causation is not necessarily established. That is so because the literal application of the "but for" test may fail to exclude causation links that are metaphysically conceivable but practically and legally absurd. But for the fact that the negligence of Driver A in blocking an intersection caused Driver B to be delayed two minutes, Driver B would not have arrived at a subsequent intersection two miles away when he did, and would not have collided with Driver C at that intersection. But for the fact that an employee is injured on the job and temporarily disabled, he would not have been at home on a normal work day and would not have fallen down his cellar stairs, tripped on a garden hose, etc. These illustrations may pass the "but for" test, but causation in any meaningful sense, whether in the context of tort law or workers' compensation law, is simply not present.

Professor Larson's expanded concept of causation produces the rather unusual result that a claimant who would be denied coverage under our law for an ordinary street risk accident that occurred while the claimant was going to or coming from actual employment, see *Morris v. Board of Education,* 339 Md. 374, 379–80, 663 A.2d 578 (1995), would be entitled to compensation if the same accident occurred while the claimant was going to or coming from a doctor for treatment of injuries suffered in an earlier industrial accident. This expansive view of causation, which invokes the necessity to "contrive" the

legal fiction of "quasi-course of employment" or to find implicit conditions of employment, leads to rather extraordinary results. Professor Larson suggests, for example, that a claimant injured by taking the wrong bottle from his medicine cabinet while endeavoring to take aspirin for a compensable injury should be entitled to compensation benefits for ingesting the wrong medicine:

> If the employee fault is simple negligence, as in carelessly taking bichloride of mercury tablets by mistake for aspirin although the bottle was plainly marked 'Poison,' under this test the subsequent injury would be compensable, and this seems to be the right result.

Larson, § 13.11(d).[1]

Presumably, the expanded concept of causation would also afford compensation if the claimant twisted his back while reaching for the medicine, or was injured while going to and from a drug store to obtain medicine. In *Dept. of Transp. v. King*, 554 So.2d 1192 (Fla.App.1989), *review denied*, 563 So.2d 631 (1990), a pedestrian injured by a car that jumped a median after colliding with another car was awarded compensation benefits because at the time of the accident she was taking a walk and had been instructed by her physician to take walks to aid the healing of an industrial injury to her leg. In *Little Caesar's Pizza v. Ingersoll*, 572 So.2d 8 (Fla.App.1990), an off-duty claimant was involved in an automobile accident while returning from a park where he had been swimming. He claimed compensation benefits for injuries sustained in the automobile accident on the ground that his doctor had recommended swimming as an appropriate exercise to recover his strength after an earlier work related injury. The court awarded compensation benefits, holding that the claimant's injuries were within the chain of causation started by the industrial accident. These holdings are not consistent with

---

1. The Court which considered that set of facts held otherwise. *Brown v. New York State Training School for Girls*, 285 N.Y. 37, 32 N.E.2d 783 (1941).

our view of the causal relationship required to support a compensation claim for consequential injuries.

In the context of tort law, we have said that in order to be a proximate cause the negligence must be 1) a cause in fact and 2) a legally cognizable cause. *Atlantic Mutual v. Kenney,* 323 Md. 116, 127, 591 A.2d 507 (1991). We have said that in considering the question of proximate cause

> it is well to keep in mind that it is simply intended to reflect current societal standards with respect to an acceptable nexus between the negligent act and the ensuing harm, and to avoid the attachment of liability where ... it appears 'highly extraordinary' that the negligent conduct should have brought about the harm.

*Henley v. Prince George's County,* 305 Md. 320, 334, 503 A.2d 1333 (1986). Because a workers' compensation claim does not involve questions of negligence and duty, the sometimes difficult concept of prospective foreseeability is not implicated. Rather, the proper approach is to view retrospectively what actually occurred and then determine in a reasonable and practical manner whether there is a sufficient nexus between the earlier industrial accident and the later injury to constitute the latter as a "direct and natural result" of the former, and to therefore establish causation. *Cf. Henley, supra,* 305 Md. at 336, 503 A.2d 1333.

█ Although, as we have discussed, there are some essential differences between the concepts of proximate cause applicable to tort law and those applicable in workers' compensation cases, we find more similarities than differences in the area of consequential injuries. Specifically, we reject the notion that causation in such cases may be determined solely by reference to the "but for" test, and we persist in our view that the claimant must establish "a direct causal connection" between the original accidental injury and the subsequent injury or condition. *Unger & Mahon v. Lidston, supra,* 177 Md. at 269, 9 A.2d 604.

Harris argues that the requisite direct causal connection is furnished by the statutory requirement that the employer

furnish medical services to an injured claimant, § 9–660 Labor & Employment Article, and the requirement that the claimant accept medical assistance that a reasonably prudent person would undergo, *Watts v. Young Company,* 245 Md. 277, 280, 225 A.2d 865 (1967). The theory is that these provisions of the Workers' Compensation Act become by implication a part of the employment contract, and therefore any trips made pursuant to the statutory and contractual obligations are sufficiently work connected. *See* Larson, § 13.13; *Taylor v. Centex Construction Company, supra.*

We do not find this argument persuasive. Instead, we find it very similar to the argument rejected in *Huffman v. Koppers Co., supra.* There, the claimant contended that he was required to attend a deposition scheduled by the employer in connection with the employer's appeal of a compensation claim, and therefore the heart attack the claimant suffered as a result of the stress of the deposition should be considered work connected. The Court of Special Appeals, in a decision later affirmed by this Court, rejected the contention that attendance at the deposition was in any way a condition of the claimant's employment. 94 Md.App. at 186, 616 A.2d 451. The Court next rejected the argument that the claimant was on a "special errand" for the employer, pointing out that the claimant was no longer working for the employer, and that failure to attend the deposition, while it may have jeopardized the claim for benefits, could not have jeopardized an employment relationship. *Id.* at 187–88, 616 A.2d 451.

Here, as in *Huffman,* attendance at the office of the physical therapist may have been necessary for the continuation of compensation benefits, but that was a requirement of statute and case law, and not a requirement of the employment.

Applying long settled rules of causation, we hold that there is no legally sufficient nexus between the claimant's occupational injury in 1989 and his subsequent fall in 1993. The claimant was not carrying out any business of his former employer at the time of the fall. No weakness or other medical condition resulting from the 1989 accident caused or

**12**

contributed to the fall. The 1993 injuries were a direct result of the claimant's slip and fall on ice, and there is no direct causal relationship between the original occupational injury and the subsequent fall. The decisions of the Workers' Compensation Commission and of the circuit court were correct and should have been affirmed.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*