42 A.3d 678

## WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

v.

## Jan WILLIAMS.

**No. 2316, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

April 26, 2012.

Sara O. Rollman (Carol B. O'Keeffe, General Counsel, Mark F. Sullivan, Deputy General Counsel, on the brief) Washington, D.C., for appellant.

H. David Leibensperger (Lauren E. Pisano, Berman, Sobin, Gross, Feldman & Darby LLP, on the brief) Gaithersburg, MD, for appellee.

Panel: EYLER, DEBORAH S., MEREDITH and WOODWARD, JJ.

MEREDITH, J.

Washington Metropolitan Area Transit Authority ("WMA-TA"), appellant, appeals from the judgment of the Circuit Court for Prince George's County which affirmed the ruling of the Workers' Compensation Commission that an injury to the right leg of Jan Williams, appellee, was causally related to the prior injury to his left leg, and therefore covered by workers' compensation benefits.

WMATA presents one question for review:

Whether Claimant's March 23, 2009[,] right knee injury, incurred when he was hit by a car while returning from lunch on a day when he was attending therapy, is causally related to the work accident of April 15, 2008, where Plaintiff injured his back and left knee?

We will answer that question in the negative, and reverse the decision of the circuit court. We will remand the case to the circuit court with instructions that the circuit court remand the case to the Commission for further proceedings consistent with this opinion.

### Facts and Procedural History

Mr. Williams's position as a mechanic for WMATA is very physically demanding. On April 15, 2008, while he was employed as a mechanic for WMATA, Mr. Williams injured his back and left knee on the job. Mr. Williams underwent physical therapy to treat the injury to his left knee. Prior to Mr. Williams regaining his full strength, when the physical therapy progress had started to plateau, it was recommended that Mr. Williams undergo work hardening, which is a more intensive form of physical therapy.

CAM Physical Therapy provided the work hardening program at a location that is not a WMATA facility. On the second to last day of the work hardening program, March 23, 2009, Mr. Williams walked to his truck during his lunch break and ate his lunch. After he finished eating, Mr. Williams walked through the parking lot, intending to return for another session of the work hardening program. While Mr.

Williams was walking back from lunch, the driver of a car on the parking lot put her car into reverse and backed into Mr. Williams, knocking him to the ground. This resulted in an injury to Mr. Williams's right knee for which Mr. Williams claimed workers' compensation benefits.

The Workers' Compensation Commission found "that the disability of the claimant's right leg/knee is causally related to the aforesaid accidental injury," and awarded benefits. WMATA filed a petition for judicial review, and requested a trial *de novo* in the circuit court. At the conclusion of a bench trial, the circuit court made the following factual findings:

> The facts are very simple in this matter. The claimant injured his back and left knee in a work-related accident on April 15th, 2008. He was going through his rehabilitation, through [h]is doctor, through [h]is therapist. It was recommended to do a work hardening program, which he was complet[ing].
>
> He was I believe 19 or 20 classes into it, at which time on March the 23rd, 2009 the Claimant, Mr. Williams, in this matter, sustained an injury to his right knee when a car backed up and hit him.
>
> Certainly, he was not working at this time. He was, the best term of course to use is he was rehabilitating at this point in time.

The circuit court affirmed the decision of the Workers' Compensation Commission, and found that Mr. Williams's injury to his right knee was compensable. WMATA appealed to this Court.

## DISCUSSION

### I. STANDARD OF REVIEW

■ Under Maryland Code (1991, 2008 Repl.Vol.), Labor and Employment Article ("LE"), § 9–745, there are two statutorily provided options for review in the circuit court of a decision of the Workers' Compensation Commission—(1) either an administrative appeal submitted on the record made

before the Commission, pursuant to LE § 9–745(c) and (e); or (2) an essential trial *de novo*, pursuant to LE § 9–745(d). Here, WMATA requested an essential trial *de novo*, and, although the ultimate decision of the Commission is considered *prima facie* correct, this Court reviews the circuit court's decision, not the decision of the Commission. *Doe v. Buccini Pollin Grp., Inc.*, 201 Md.App. 409, 419–20 (2011). Under these circumstances, we review the factual findings of the circuit court for clear error, and we review matters of law *de novo*. *Id.*

## II. APPLICATION OF *MACKIN* TO THE PRESENT CASE

WMATA contends that reversal is required by the decision of *Mackin v. Harris*, 342 Md. 1, 672 A.2d 1110 (1996), in which the Court of Appeals addressed a similar factual scenario. In *Mackin*, a former employee of Mackin & Associates was undergoing physical therapy to treat an injury which the employee incurred while employed by Mackin & Associates. *Id.* at 2–3, 672 A.2d 1110. That injury was compensable through workers' compensation. *Id.* On the way to the physical therapist's office, the employee slipped and fell on a patch of ice and sustained an additional injury. *Id.* The employee made a second claim for worker's compensation benefits from Mackin & Associates, arguing that the second injury "was a consequence of the first and should likewise be compensable." *Id.* at 3, 672 A.2d 1110. At the time of the second injury, the employee was no longer employed by Mackin & Associates. *Id.* at 2, 672 A.2d 1110.

In its opinion addressing whether the second injury should be compensable under these circumstances, the Court of Appeals took note of the analysis of Professor Larson in this area, *id.* at 5, 672 A.2d 1110, and quoted the following passage expressing Professor Larson's view on consequential injuries such as the injury in the *Mackin* case:

"Since, in the strict sense, none of the consequential injuries we are concerned with are in the course of employment, it becomes necessary to contrive a new concept, which we may

for convenience call 'quasi-course of employment.' By this expression is meant activities undertaken by the employee following upon his injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury. 'Reasonable' at this point relates not to the method used, but to the category of activity itself. . . . Quasi-course activities in this sense would include, for example, making a trip to the doctor's office and reaching for aspirin in the medicine cabinet."

*Id.* at 6–7, 672 A.2d 1110 (quoting LEX K. LARSON, 1 LARSON'S WORKERS' COMPENSATION LAW § 13.11(d) (1993)).

But the *Mackin* Court adopted a narrower rule regarding compensability of subsequent injuries:

We are in general agreement with the basic rule advocated by Professor Larson—**that a subsequent injury is compensable if it is the direct and material result of a compensable primary injury. We do not agree, however, that this concept of causation should be extended to embrace every subsequent accident that may occur while going to and coming from a doctor or other health care provider** or obtaining or taking medication for an original compensable injury. More specifically, we hold that under the facts of this case, the fall on ice while going to a therapist's office for treatment of a compensable injury suffered three years earlier with a former employer is not a direct and natural result of the earlier injury.

Professor Larson's approach to causation in consequential injury cases appears to rely heavily, if not almost exclusively, on the "but for" test; but for the first injury and the need for treatment therefor, would the second accident have occurred?

\* \* \*

... This expansive view of causation, which invokes the necessity to "contrive" the legal fiction of "quasi-course of employment" or to find implicit conditions of employment, leads to rather extraordinary results.

*Id.* at 7–9, 672 A.2d 1110 (emphasis added).

The Court enunciated the proper standard to be applied in Maryland cases as follows:

**Rather, the proper approach is to view retrospectively what actually occurred and then determine in a reasonable and practical manner whether there is a sufficient nexus between the earlier industrial accident and the later injury to constitute the latter as a "direct and natural result" of the former, and to therefore establish causation.** *Cf. Henley* [*v. Prince George's County,* 305 Md. 320, 336, 503 A.2d 1333 (1986) ].

Although, as we have discussed, there are some essential differences between the concepts of proximate cause applicable to tort law and those applicable in workers' compensation cases, we find more similarities than differences in the area of consequential injuries. **Specifically, we reject the notion that causation in such cases may be determined solely by reference to the "but for" test, and we persist in our view that the claimant must establish "a direct causal connection" between the original accidental injury and the subsequent injury or condition.** *Unger & Mahon v. Lidston,* [177 Md. 265, 269, 9 A.2d 604 (1939) ].

*Id.* at 10, 672 A.2d 1110 (emphasis added).

Purporting to apply the standard set out in *Mackin* to the present case, the circuit court in this case stated:

[T]he question is[: . . . ] is he covered or not. And the question in [*Mackin* ] was a situation where the person was going to his physical therapist three years after the injury, no longer working for the company, and slips and falls on some ice. And the question is whether or not it was compensable or not.

... And the basic rule is that a subsequent injury, whether an aggravation of the original injury, or a new and

distinct injury is compensable, if it is the direct and natural result of a compensable primary injury.

The circuit court then recounted the portion of the *Mackin* opinion, set out above, in which Professor Larson advocates that consequential injuries should be covered as part of a "quasi-course of employment." Yet, the circuit court failed to note that, in *Mackin*, the Court of Appeals actually adopted a significantly narrower standard than the one advocated by Professor Larson, and the Court of Appeals criticized Larson's formulation that is based on the " 'contrive[ed]' ... legal fiction of 'quasi-course of employment' " because "it leads to rather extraordinary results." *Mackin, supra,* 342 Md. at 8–9, 672 A.2d 1110.

The circuit court concluded that *Mackin* supports Mr. Williams's workers' compensation claim for the second injury, and stated:

> In this case Mr. Williams was rehabilitating. He was ordered to be and he was directed by a doctor to take this work hardening program. He was at the work hardening program. In his analysis, he's a covered employee. The Court affirms Commissioner Adams' finding in this matter. . . .

■ In our view, WMATA's position is supported by the *Mackin* Court's analysis. There was not a sufficient nexus between Mr. Williams's two accidents for the circuit court to conclude that there was a direct causal connection between the first accidental injury (to the left knee) and the subsequent injury to the right knee. If the test of causal relation which the claimant was required to satisfy was simply the "but for" test, then it would have been satisfied—*i.e.,* but for Mr. Williams's first injury, he would not have been in the parking lot for the work hardening program, and would not have been hit by a car in that lot. But the Court in *Mackin* expressly rejected that line of reasoning, and required the demonstration of a "direct and material relationship," which the Court said was akin to the concept of proximate cause in tort law. *Id.* at 10, 672 A.2d 1110. There must be " 'a direct causal

connection' between the original accidental injury and the subsequent injury." *Id.* Here, Mr. Williams's second injury was not *caused by* his first injury.

The appropriate method of analysis, and the method adopted in *Mackin,* is to view "retrospectively what actually occurred and then determine in a reasonable and practical manner whether there is a **sufficient nexus** between the earlier industrial accident and the later injury." *Id.* (emphasis added). In other words, in the context of subsequent injuries, the key to the analysis of whether a subsequent injury is covered as an extension of the prior covered injury is whether the first injury proximately caused the second injury. " '[P]roximate cause' means that the result could have been caused by the [first injury] and that there has not intervened, between the [first injury] and the [second injury], any other efficient cause." *Id.* at 5, 672 A.2d 1110 (quoting *Lidston, supra,* 177 Md. at 269, 9 A.2d 604). Proximate cause requires both cause in fact, also known as "but for" causation, mentioned above, *as well as* legal causation—which can be satisfied in this context by a finding of a "direct and material relationship" between the two injuries. *Id.* at 10, 9 A.2d 604.

Here, looking at the concept of proximate cause, and the issue of whether the second injury was a direct and material result of the first injury, it cannot be said that Mr. Williams's second injury (*i.e.,* the one to his right knee) *directly resulted from* the first injury (*i.e.,* the one to his left knee). The analysis in *Mackin* on this issue is on point. In both cases, the second injury directly resulted from some cause unrelated to the first injury. In *Mackin,* the second injury resulted from the icy conditions on the ground. *Id.* at 2, 672 A.2d 1110. Here, the second injury resulted from the driver's actions in hitting Mr. Williams in the parking lot. The negligent actions of the driver whose car hit Mr. Williams were not at all connected to the first injury (excluding the fortuitous fact that the first injury placed Mr. Williams in the lot); only the actions of the driver, and not the first injury, had a direct and material causal relationship to Mr. Williams's second injury.

Mr. Williams's case is distinct from scenarios under which Maryland courts have held that a subsequent injury is attributable to a previous covered injury. For instance, Mr. Williams does not contend that the April 15, 2008, injury reduced his mobility and thereby prevented him from avoiding the car. Therefore, Mr. Williams's case does not fall into line with Maryland cases that allow workers' compensation recovery when a compensable injury *physically* leads to a second injury. *See, e.g., Lidston, supra,* 177 Md. at 270, 9 A.2d 604 (holding that the question of whether a compensable ankle injury caused a later hip injury should be decided by the jury); *Williams Constr. Co. v. Garrison,* 42 Md.App. 340, 342–43, 348, 400 A.2d 22 (1979) (affirming the circuit court's decision to allow recovery for a second injury when dizziness resulting from a prior, compensable injury caused the second injury, despite the fact that the employee was no longer employed with the same company at the time of the second injury). Nor does Mr. Williams's case fit into the category of cases where recovery has been allowed for subsequent injuries that occurred as a result of medical malpractice in the treatment of a prior compensable injury. *See Nazario v. Washington Adv. Hosp.,* 45 Md.App. 243, 412 A.2d 1271 (1980). The *Mackin* Court drew these distinctions. 342 Md. at 4–5, 672 A.2d 1110.

Furthermore, the *Mackin* Court rejected the contention that the statutory requirement that an employer pay for medical treatment for injuries covered by workers' compensation sufficiently connects the treatment of the injuries to the employment to furnish the requisite "direct causal connection." *Id.* at 10–11, 672 A.2d 1110.

We conclude that the circuit court committed legal error when it failed to recognize and apply the more narrow view of compensability adopted by the Court of Appeals in *Mackin,* and that failure led to an incorrect result in this case. Therefore, we reverse the decision of the circuit court.

## III.  AN ADDITIONAL AVENUE FOR COVERAGE

As we have explained above, our review of the trial record persuades us that the claim relative to the 2009 accident

should not have been considered compensable as an injury caused by the first injury. But the Commission did not reach the question of whether the second injury, standing alone, was compensable. *Cf. Good Samaritan Hosp. v. Jacobson,* 98 Md.App. 587, 595, 634 A.2d 969 (1993) ("We hold that, if an employer requires an individual to receive a physical examination on its premises and the reason for the physical examination is for the employer's benefit, there exists sufficient direction and control by the employer for the examination to be within the scope of coverage by the workers' compensation law."); *Austin v. Thrifty Diversified, Inc.,* 76 Md.App. 150, 162, 543 A.2d 889 (1988) ("The benefit expected by, or accruing to, the employer as a result of allowing personal projects to be done using its equipment and on its premises is no different than that flowing to the employer as a result of its sponsorship of recreational or social events.").

Unlike the employee in the *Mackin* case, Mr. Williams was still employed by WMATA at the time of the second injury. *Mackin, supra,* 342 Md. at 3–4, 672 A.2d 1110. Whether Mr. Williams's second injury could be considered to have occurred in the course of employment, standing alone, has not yet been adjudicated.[1]

The following discussion occurred at the hearing before the Commission:

[Mr. Williams's counsel]: The third issue that we're asking for, Your Honor, is causal relationship of the right knee to this case. Although both knees were listed on the claim form, the claimant was leaving his last session of work hardening on March 23rd of 2009 when a vehicle was backing out of a parking spot and struck him in the right knee, and that's going to be a legal issue, I suspect. We're basing our claim on the positional risk test, and I know

1. As noted by Mr. Williams, in situations involving injuries caused by the negligence of third parties, a claimant is only required to show that the injury occurred in the course of employment, and need not demonstrate that the injury arose out of employment. LE § 9–101(b)(2); *Bd. of Educ. v. Spradlin,* 161 Md.App. 155, 208, 867 A.2d 370 (2005); *see also Doe, supra,* 201 Md.App. at 424–25, 29 A.3d 999.

[WMATA's counsel] has a case included in her packet, and I guess we'll deal with that later.

\* \* \*

[WMATA's counsel]: And, Your Honor, our position is exactly as [claimant's counsel] stated. It's a legal issue for you to make a decision on. There was no treatment to the right knee. There were no problems with the right knee. Dr. Manderson specifically states that the cause of injury to the right knee is being hit by a car, and he was hit by a car as he was leaving therapy.

And yes, the therapy was the work-related injury, but our position would be based on *Mackin and Associates v. Harris* .... [C]ausal relationship is not established based on those facts.

THE COMMISSIONER: All right. And you're relying on what case?

[Mr. Williams's counsel]: Yes, Your Honor. If I could just give you the case of *Montgomery County v. Smith.* That's 799 A.2d, page 406, and that's a 2002 case. What the Court held there, Your Honor, the employee in this case was a prison guard and he was off duty. He was playing basketball on the prison site.

The Court found that he was not in the course of his employment and his injury did not arise out of his employment because he was not playing basketball due to some incident related to his employment and due to some obligation to the employer. That is a complete contrast to this case, Your Honor.

On March 23rd, 2009, Mr. Williams was attending his final session of work hardening to enable him to return to work for the employer in this case. And as I indicated earlier, he was able to return to full duty employment with his employer on March 6th, 2009.

**The work hardening was based on the order of the employer in this case.** It was scheduled through the nurse case manager who was hired and paid for by the employer in this case.

Moreover, Your Honor, Mr. Williams was paid wages by the employer in this case, as Your Honor knows is self-insured. Mr. Williams would not have been at work hardening but for his work injury of April 15th, 2008.

\* \* \*

**Clearly WMATA had required Mr. Williams to be in the parking lot at the work hardening facility at the time that he was struck by the vehicle on March 23rd, 2009. He wouldn't have been there had WMATA not required him to be there. And he needed to be there in order to get back to work with WMATA, which he successfully was able to do** on April 6th, 2009. And that's what we base our case on, Your Honor.

(Emphasis added.)

The order issued by the Commission did not reach the question of whether the second injury could be considered, standing alone, to have occurred in the course of employment because the Commission instead made a finding that "the disability of the claimant's right leg/knee is causally related to the aforesaid accidental injury."

In *Trojan Boat Co. v. Bolton*, 11 Md.App. 665, 276 A.2d 413 (1971), this Court examined the procedure to be followed when a decision of the Commission makes moot additional issues that were presented to the Commission but not reached. When the Commission decides a claim based on one issue that obviates the need to address remaining issues, the remaining issues are moot. *Id.* at 672, 276 A.2d 413 ("The issue was obviously not implicitly decided by the Commission because in the logical process of disposing of the claim by deciding it was not accidental in the course of employment, the Commission did not reach the issue of causation."). We addressed the procedure for dealing with moot issues as follows:

Neither the Court of Appeals nor this Court has specifically decided the proper procedure for determining issues originally and properly presented to the Commission but rendered moot by the Commission's decision to disallow the claim on other grounds, which decision is later reversed by

a court on appeal. The practice, however, seems to have developed that in such cases, **the proper procedure is to remand the proceedings to the Commission for original determination of the remaining issues which were thought to be moot in the earlier Commission proceedings.**

*Id.* at 668–69, 276 A.2d 413 (emphasis added).

■ Here, because the Commission decided that the second injury was causally related to the first injury, it did not need to address whether, *standing alone,* the second injury could be said to have occurred in the course of employment. Therefore, that issue of whether the second injury occurred in the course of employment became moot.[2] Accordingly, following the "proper procedure" prescribed in *Trojan Boat, id.* at 669, 276 A.2d 413, we remand the case to the circuit court with instructions to remand the case to the Commission for it to address the issue of whether the second injury, standing alone, could be said to have occurred in the course of employment.[3]

**THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY IS REVERSED. THE CASE IS REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE WORKERS' COMPENSATION COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

2. Although Mr. Williams did not explicitly argue that the second injury should be analyzed independently of the first injury, the basis of Mr. Williams's argument for finding that Mr. Williams was acting in the course of employment (*i.e.,* that WMATA required Mr. Williams to attend work hardening) would support such an assertion.

3. We note that, pursuant to LE § 9–709(b)(2), the Commission may exercise its discretion in determining whether a separate claim must be filed before deciding whether the second injury, standing alone, occurred in the course of employment. In addition, we note that, even if a separate claim is required to be filed, pursuant to LE § 9–708(b), the two-year statute of limitations for the bar on claims does not begin to run until an employer files an injury report.