**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DEREK THOMPSON, individually and as
personal representative of the estate of
Cynthia Thompson,

     Plaintiff - Appellant,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

     Defendant - Appellee.

No. 18-1422
(D.C. No. 1:16-CV-01202-PAB-KLM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **McKAY**, and **CARSON**, Circuit Judges.
_____

This case involves a dispute over underinsured motorist ("UIM") coverage.

Cynthia Thompson was injured in a car accident. Six months later, she died after

overdosing on prescription drugs. Her son Derek Thompson ("Plaintiff") sued Ms.

Thompson's insurer, State Farm Mutual Automobile Insurance Company ("State

Farm"), after it refused to pay UIM benefits. State Farm moved for summary

judgment, which the district court granted. Plaintiff now appeals.

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

We exercise jurisdiction under 28 U.S.C. § 1291 and consider whether Plaintiff demonstrated the existence of a fact issue as to whether the car accident proximately caused Ms. Thompson's overdose and resulting death. Because Plaintiff met his burden, we reverse and remand for further proceedings.

I.

In August 2013, an underinsured motorist failed to yield to the vehicle in which Ms. Thompson was a passenger. The resulting collision broke Ms. Thompson's neck.[1] For the next several months, Ms. Thompson's doctors prescribed oxycodone and diazepam to alleviate her pain.

Six months later, Ms. Thompson died at home. The physician who performed the autopsy, Dr. Robert Kurtzman, concluded she died after overdosing on prescription drugs. Dr. Kurtzman detected no oxycodone in her blood. Instead, he discovered a fentanyl patch on her back, and both fentanyl and diazepam in her blood. Dr. Kurtzman opined the combination of fentanyl and diazepam caused an accidental overdose that resulted in her death. As it turns out, Ms. Thompson had a history of neck pain. And years before this accident, Ms. Thompson's doctors prescribed her fentanyl to treat and alleviate that neck pain. In fact, her medical records reveal she last received a prescription for fentanyl in 2010. Plaintiff explained that Ms. Thompson used a leftover fentanyl prescription as a substitute for the oxycodone because the oxycodone caused extreme nausea. But because she was

---

[1] Specifically, Ms. Thompson suffered a hangman's fracture, which involves a fracture of the second vertebra toward the top of the neck, close to the skull.

2

no longer a regular fentanyl user, she lost her tolerance to it, and the combination of fentanyl and diazepam proved deadly. It thus appears that Ms. Thompson died from an attempt at self-medication.

After Ms. Thompson passed away, Plaintiff sent a demand letter to State Farm claiming his mother's UIM benefits. State Farm, however, refused to pay benefits because the car accident did not cause her overdose and resulting death. Plaintiff sued State Farm and sought a declaration of his entitlement to UIM benefits under the State Farm policies. In a summary judgment motion before the district court, State Farm argued that Ms. Thompson's self-medication, not the car crash, proximately caused her death. In other words, State Farm argued that her self-medication intervened to break the chain of causation. State Farm claimed it could not foresee that a car accident might cause Ms. Thompson to overdose on a medication that doctors last prescribed in 2010—some three years before the accident. Plaintiff countered that it is foreseeable that an injured person like Ms. Thompson would use a leftover medication, especially because Ms. Thompson had previously used that same medication to treat a similar type of pain. The district court agreed with State Farm, concluding as a matter of law that Ms. Thompson's fentanyl use constituted an intervening act that severed the chain of causation between the accident and her death. The district court therefore granted summary judgment in favor of State Farm. We exercise jurisdiction under 28 U.S.C. § 1291, and our review is de novo. Carpenter v. Boeing Co., 456 F.3d 1183, 1192 (10th Cir. 2006) ("Our standard of

3

review on summary judgment is de novo; we apply the same legal standard to be used by the district court.").

## II.

## A.

Plaintiff originally filed suit in Colorado state court. But State Farm removed the case to federal district court on the basis of diversity jurisdiction. A federal court sitting in diversity applies state substantive law. Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d 1152, 1162 (10th Cir. 2017). The parties agree that Colorado tort law governs the causation issue in this case.

Before the district court, Plaintiff sought a declaration that he is entitled to UIM benefits under the terms of State Farm's policies.[2] Colorado law requires insurers to "pay to the insured, up to the limit of the policy, whatever losses the insured proves he or she is 'legally entitled to recover' from the uninsured motorist." Briggs v. Am. Family Mut. Ins. Co., 833 P.2d 859, 861 (Colo. App. 1992) (quoting Colo. Rev. Stat. § 10-4-609(a)(1), (4)). Thus, to recover, the insured must prove the "underinsured motorist was negligent and the extent of the damages." Id.

Negligence requires: (1) the existence of a legal duty; (2) breach of that duty; (3) causation; and (4) damages. HealthONE v. Rodriguez ex rel. Rodriguez, 50 P.3d 879, 888 (Colo. 2002) (en banc). The causation element comprises both actual causation and proximate causation. See Moore v. W. Forge Corp., 192 P.3d 427, 436

---

[2] State Farm does not dispute that Plaintiff is an "insured" for purposes of recovering UIM benefits.

(Colo. App. 2007). Actual causation asks whether the defendant's negligence was the but-for cause of the plaintiff's harm—that is, "whether, but for the alleged negligence, the harm would not have occurred." N. Colo. Med. Ctr., Inc. v. Comm. on Anticompetitive Conduct, 914 P.2d 902, 908 (Colo. 1996) (en banc) (quoting Smith v. State Comp. Ins. Fund, 749 P.2d 462, 464 (Colo. App. 1987)).

Proximate causation, on the other hand, addresses foreseeability. Westin Operator, LLC v. Groh, 347 P.3d 606, 614 n.5 (Colo. 2015). Proximate causation evaluates whether the defendant's negligence will foreseeably result in injuries to others. Build It & They Will Drink, Inc. v. Strauch, 253 P.3d 302, 306 (Colo. 2011) (en banc). The foreseeability analysis does not require a defendant "to foresee the exact nature and extent" of the injuries. Id. (quoting HealthONE, 50 P.3d at 889). Nor does it require the defendant to foresee the "precise manner in which" the tortious conduct caused the injuries. HealthONE, 50 P.3d at 889. Instead, the defendant must only foresee that "*some* injury will likely result in *some* manner" because of his negligent acts. Id. (emphasis added).

Even so, proximate causation is not so broad as to result in unlimited liability. On the contrary, proximate causation limits a negligent actor's liability when an unforeseeable cause intervenes to bring about an injury. See Moore, 192 P.3d at 436. In other words, an "intervening cause" relieves a defendant of liability when the defendant could not have reasonably foreseen it. Redden v. SCI Colo. Funeral Servs., Inc., 38 P.3d 75, 81 (Colo. 2001) (en banc). Proximate causation is generally resolved by the trier of fact. Hilzer v. MacDonald, 454 P.2d 928, 929 (Colo. 1969)

5

(en banc). "[O]nly in the clearest of cases, where the facts are undisputed and reasonable minds could draw but one inference" may the court decide proximate causation as a matter of law. Id.

B.

The district court concluded that Plaintiff failed to present sufficient evidence of proximate causation to survive summary judgment.[3] More specifically, the district court held Ms. Thompson's use of an unprescribed narcotic to be unforeseeable as a matter of law. While no Colorado court has directly addressed foreseeability in this context, Colorado appellate decisions nonetheless emphasize that proximate causation is generally a fact question for the jury. See, e.g., Build It and They Will Drink, Inc., 253 P.3d at 306. For that reason, a court may decide proximate causation as a matter of law only when reasonable minds could reach but one conclusion from the evidence. Roberts v. Fisher, 455 P.2d 871, 872 (Colo. 1969) (en banc).

---

[3] For the first time on appeal, State Farm now appears to challenge actual causation. State Farm alleges that no evidence shows that Ms. Thompson used the fentanyl patch to treat pain resulting from the car accident.

We decline to consider State Farm's arguments pertaining to actual causation. In its motion for summary judgment, State Farm only made arguments regarding proximate causation and foreseeability. And the district court assumed "that Ms. Thompson used the fentanyl to alleviate pain resulting from injuries sustained in the car accident." Indeed, the first time State Farm even arguably raised the issue of actual causation was in its summary judgment surreply brief, to which Plaintiff had no opportunity to respond. Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1164 (10th Cir. 1998) (requiring that the nonmoving party be given notice and a reasonable opportunity to respond). "Generally, we do not consider issues not presented to, considered and decided by the trial court." Utah Envtl. Cong. v. Russell, 518 F.3d 817, 828 (10th Cir. 2008) (internal citations and quotation marks omitted). We thus decline to consider the issue of actual causation.

6

As we see it, reasonable minds could disagree as to whether Ms. Thompson's overdose on pain medication was foreseeable. Plaintiff's expert opined that "Ms. Thompson's manner of death is consistent with that of an accident via what appears a self-directed attempt to control her pain to prolonged healing of traumatic cervical spine injury."[4] Plaintiff also presented evidence that Ms. Thompson had a prior prescription for fentanyl and that she used fentanyl patches to treat neck pain for many years before the car accident. Plaintiff explained that Ms. Thompson replaced the oxycodone with a leftover fentanyl patch because the oxycodone caused her to experience extreme nausea. The district court accepted Plaintiff's evidence but concluded that Ms. Thompson's use of a dangerous narcotic was unforeseeable as a matter of law. In reaching this conclusion, the district court failed to adequately consider the context of the situation and draw all inferences in Plaintiff's favor. As the record demonstrates, Ms. Thompson successfully used fentanyl patches in the past to alleviate her neck pain. Then, after suffering a broken neck in the car crash, her neck pain returned. Plaintiff presented evidence that Ms. Thompson stopped using the prescribed oxycodone because it made her sick and instead used a leftover fentanyl patch—a medication she used (with a prescription) in the past to treat a

---

[4] State Farm states in one perfunctory sentence that Plaintiff's expert relied on inadmissible hearsay. State Farm, however, provides no substantive explanation and cites no legal authority supporting its position. We therefore deem that argument waived. Seifert v. Unified Gov't of Wyandotte Cty/Kan. City, 779 F.3d 1141, 1156 (10th Cir. 2015) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (alteration in original) (quoting Murrell v. Shalala, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994))).

similar, if not identical, type of pain.  A reasonable jury could conclude that based on

her medical history and prior use of fentanyl patches, it was reasonably foreseeable

that she would use a leftover patch to treat her resurfaced neck pain after the

accident.  The district court's conclusion creates a bright-line rule that automatically

cuts off causation whenever a person overdoses on non-prescribed or leftover

medication.  Under Colorado law, however, the fact-intensive nature of proximate

causation and foreseeability cautions against such a bright-line rule.

Indeed, Colorado courts have held that third-party negligent treatment,[5]

intentional torts, suicide, and criminal acts may be foreseeable and are more

appropriate for a jury to decide.  Redden, 38 P.3d at 81 n.2 (recognizing "that

Colorado case law does not absolve tortfeasors of liability when the plaintiff's

injuries result from medical treatment reasonably sought and directly related to the

actions of the original tortfeasor"); Moore, 192 P.3d at 436–37 (recognizing that

when a defendant's negligence causes cognitive or psychological injury to a person, a

jury may decide whether the person's subsequent suicide was foreseeable to the

---

[5] State Farm argues that Ms. Thompson was grossly negligent because she was a nurse, and a nurse's decision to take a dangerous narcotic cannot be viewed as simple negligence.  And because Ms. Thompson's conduct rises to the level of gross negligence, that conduct was unforeseeable as a matter of law.  In civil cases, however, the factfinder "must weigh the conduct of the parties, be it slightly, grossly, recklessly or willfully negligent, and make the appropriate percentage allocation of fault."  White v. Hansen, 837 P.2d 1229, 1234 (Colo. 1992) (en banc).  Our task is simply to determine whether Ms. Thompson's conduct was reasonably foreseeable.  Then, the jury can separately evaluate whether Ms. Thompson's conduct was also grossly negligent and assign her an appropriate percentage of fault based on that conduct.

defendant); <u>Eckberg v. Greene</u>, 588 P.2d 375, 377 (Colo. 1978) (en banc) (reversing the lower's court finding that proximate causation did not exist even though the plaintiffs were trespassers who were injured by the acts of other trespassers). Colorado courts thus strongly favor having juries resolve proximate causation questions. And while not binding in this case, the weight of authority from other jurisdictions also suggests that a jury should resolve whether proximate causation exists when a decedent overdoses on medication, illicit drugs, or alcohol.[6] We likewise hold that a jury should decide proximate causation here.

Because Plaintiff presents evidence that Ms. Thompson used the fentanyl patch to alleviate pain resulting from her accident-related injuries, we conclude that a reasonable jury could find that Ms. Thompson's accident-related pain proximately caused her overdose.[7]

---

[6] <u>See e.g.</u>, <u>Fennell v. Md. Cas. Co.</u>, 344 S.W.2d 352, 355 (Tenn. 1961); <u>Clemons v. Miele</u>, No. UWYCV116010477, 2013 WL 3802415, at *6–7 (Conn. Super. Ct. July 2, 2013); <u>Joseph E. Seagram & Sons, Inc. v. Willis</u>, 401 N.E.2d 87, 91–92 (Ind. Ct. App. 1980); <u>Paul v. State Farm Mut. Auto. Ins. Co.</u>, No. 14-1382, 2016 WL 5407734, at *28 (W.D. Pa. Sept. 28, 2016); <u>Leja v. Schmidt Mfg., Inc.</u>, No. 01-5042 (DRD), 2010 WL 2681975, at *7 (D.N.J. July 1, 2010); <u>Wetstein v. W. Terrace Constr. Co.</u>, No. 95 CIV. 5476 (CSH), 1999 WL 504910, at *3–4 (S.D.N.Y. July 16, 1999). But see <u>Brown v. N.Y. State Training Sch. for Girls</u>, 32 N.E.2d 783, 784 (N.Y. 1941); <u>Keusch v. Farm Bureau Ins. Co.</u>, No. 297642, 2011 WL 3821275, at *6 (Mich. Ct. App. Aug. 30, 2011).

[7] Because the district court ruled on proximate causation as a matter of law, it did not reach alternative arguments for summary judgment. We decline to consider any alternative arguments and remand all of Plaintiff's claims to the district court. <u>Sylvia v. Wisler</u>, 875 F.3d 1307, 1326 (10th Cir. 2017) (concluding that the "most prudent and fair course is to allow the district court to address this [alternative] claim in the first instance on remand").

III.

For the foregoing reasons, we REVERSE the district court's grant of summary

judgment and REMAND for further proceedings consistent with this opinion.

Entered for the Court


Joel M. Carson III
Circuit Judge